803 F.2d 718
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CLAYTON CARLSON, Plaintiff-Appellant
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 85-1655.
 United States Court of Appeals, Sixth Circuit.
 Sept. 15, 1986.
 
 Before MERRITT, KRUPANSKY and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Clayton Carlson, plaintiff-appellant, appeals the district court's decision affirming the Secretary's denial of social security disability benefits. Carlson claims entitlement to disability benefits due to emphysema and chronic obstructive pulmonary disease. He argues that there is not substantial evidence to support the Secretary's findings: 1) that his work was semi-skilled; 2) that he has acquired skills which are transferable to sedentary work or to a significant number of sedentary jobs; and 3) that his non-exertional limitations do not significantly limit the range of sedentary work he could perform.
 
 
 2
 Because we conclude that there was substantial evidence to support the Secretary's disposition of the case, the decision of the district court is affirmed.
 
 I.
 
 3
 Carlson filed for benefits on June 30, 1982, at age 57, alleging that as of April 21, 1982, he was unable to perform substantial gainful activity due to emphysema. The disability examiner determined, however, that Carlson was not disabled. After unsuccessfully seeking reconsideration, Carlson requested, and was granted, a hearing before an Administrative Law Judge (ALJ). The ALJ found that Carlson suffered a severe impairment that prevented him from performing his past work, but that he was not disabled because he could perform sedentary work, and that a substantial number of such jobs were available. Subsequent review by the Appeals Council was denied, and the ALJ's decision became that of the Secretary of Health and Human Services, Salmi v. Secretary of Health & Human Services, 774 F.2d 685, 692 (6th Cir. 1985). On June 19, 1985, the district court granted judgment to the defendant, affirming the Secretary's denial of benefits.
 
 II.
 
 4
 Carlson left work on April 21, 1982 because he was coughing, spitting up, and feeling ill. He had had breathing problems for the ten previous years, which resulted in his being assigned to lighter work. His condition had worsened so that he needed oxygen at times at work. He could not walk a long block without stopping for a rest. Carlson would mow or fertilize his own lawn by making one pass at a time and resting after each pass. After ascending or descending stairs, he would have to rest. He became short of breath, coughed, often producing phlegm, and could not exert himself without resting for a "breather." In the shop, paint and welding fumes made it difficult for him to breathe.
 
 
 5
 The ALJ received the medical opinions of Doctors Nimbach, Efros and Wood. Dr. Nimbach refused to provide any supporting information, but stated Carlson was totally disabled from performing his present work due to chronic obstructive pulmonary disease and emphysema. He did not address possible sedentary employment or any non-exertional limitations.
 
 
 6
 Dr. Efros said that Carlson could return to his present employment providing he worked in a well-ventilated area, because of emphysema and chronic bronchitis contracted by his forty years of cigarette smoking. Although the fumes and smoke from work may have exacerbated Carlson's difficulties, the job did not contribute very much to his problems. Rather, Dr. Efros blamed the condition on cigarettes and recommended that Carlson quit smoking. Carlson still smokes one pack a day. Dr. Efros concluded that because a welder is constantly exposed to smoke, "Carlson is disabled from his previous duties as a welder at the present time." Again, Dr. Efros did not foreclose sedentary employment and did not suggest that Carlson had any other non-exertional limitations.
 
 
 7
 Dr. Wood diagnosed Carlson as suffering from chronic obstructive pulmonary disease. He gave no opinion whether Carlson could work.
 
 
 8
 According to Dr. Efros, Carlson is taking Prednisone, Erythromycon and Bronkometer to assist his breathing. Carlson's breathing difficulties have since lessened somewhat.
 
 
 9
 In his brief, plaintiff alleges rapid weight loss and a "slightly cachetic" condition. According to Dr. Wood's report, Carlson's weight loss was due to his adjustment to his new dentures. Further, Dr. Wood found Carlson to be "a medium built male, moderately nourished and . . . not . . . acutely ill or in any distress." Dr. Efros made this same finding.
 
 
 10
 Carlson testified that he had a ninth grade education; and, aside from blueprint reading training, no other formal training. He has been welding for forty years. His latest job was as a "Fab A." His work entailed: building "Steel Parts washers, Oil Recovery units, Water Filtering Syt. Weldments for Automation, Parts Washers, Pumps . . ., Fixtures . . ., and all weldments, For Same Tools used Grinders, and Personal Tools, Welding Mach." Carlson also made wall mounts, designed jigs, performed arc and specialty welding, visually inspected welds, read blueprints, and used micrometers, surface grinders, and a drill press. According to Carlson, his work was the equivalent of journeyman work. He testified that although his lighter work was initially given him as "favored employment" because of his ill health, that "after awhile, I designed a lot of jigs for a lot of different things and it . . . worked out to the point . . . where my benefit being there, rather than being in the floor," benefitted his employer.
 
 
 11
 The vocational expert classified Carlson's work as light semi-skilled, bordering on skilled, employment. He based this conclusion on Carlson's testimony, particularly that relating to jig fixtures, welding, and machine operations.
 
 
 12
 The vocational expert identified the following skills Carlson acquired from his position: dexterity, coordination, judgment, responsibility, "Knowledge of a job that was well done to include the eyeball . . . inspection process, the technical knowledge in the different aspects of metals, and the welding of metals, utilization of tools and equipment, some machine operations, and certainly a high degree of concentration." The vocational expert identified these skills as transferable to sedentary employment and identified five thousand to ten thousand such jobs in the area that Carlson could assume with "very, very little" vocational adjustment. Five thousand of these sedentary positions are available in the Detroit area in an environment free from paint fumes, mechanical devices, and chemicals. Some one thousand of these positions would also be free from soldering fumes, oil and grease.
 
 III.
 
 13
 The medical-vocational guideline "grid" of the Social Security Administration provides that a claimant over fifty-five years of age, who is disabled from performing his or her current job, is eligible for benefits unless that individual has an education or transferable skills sufficient for that individual to obtain employment in a sedentary position requiring very little vocational adjustment. 20 C.F.R. Secs. 404.1501-1599 (1983); see Ellington v. Secretary of Health & Human Services, 738 F.2d 159 (6th Cir. 1984).
 
 
 14
 Carlson claims that the following three findingsof the Secretary were not supported by substantial evidence: 1) his work was semi-skilled; 2) he has acquired skills transferable to sedentary work or to a significant number of sedentary jobs; 3) his non-exertional limitations do not significantly limit the range of sedentary work he could perform.
 
 
 15
 Although the Social Security Act is a remedial statute, to be liberally applied, Marcus v. Califano, 615 F.2d 23, 29 (2d Cir. 1979); Williams v. Califano, 590 F.2d 1332, 1334 (5th Cir. 1979); Kohrs v. Flemming, 272 F.2d 731 (8th Cir. 1959), the findings of the ALJ are conclusive if supported by substantial evidence, Sec. 205(g) of the Social Security Act, 42 U.S.C. Sec. 405(g). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,"' Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Garner v. Heckler, 745 F.2d 383, 387-88 (6th Cir. 1984), and must be based on the record as a whole, Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).
 
 
 16
 The burden of proving entitlement to benefits rests on the plaintiff. Carlson has met his initial burden of showing he is unable to perform his usual work. The burden of establishing that other work is available to Carlson shifts to the Secretary, Kirk v. Secretary of Health & Human Services, 667 F.2d 524, 529 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983); Allen v. Califano, 613 F.2d 139; Ragan v. Finch, 435 F.2d 239, 241 (6th Cir. 1970), cert. denied, 402 U.S. 986 (1971); see also Rossi v. Califano, 602 F.2d 55, 57-58 (3d Cir. 1979).
 
 
 17
 The Secretary did find that Carlson acquired skills transferable to sedentary employment, of which there were numerous positions in the area.
 
 
 18
 Plaintiff argues that the Secretary erred in categorizing Carlson's work as semi-skilled. Unskilled work is defined in 20 C.F.R. Sec. 404.1568(a) as "work which needs little or no judgment to do." Semi-skilled work is defined in 20 C.F.R. Sec. 404.1568(b) as "work which needs some skills but does not require doing the more complex job duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending . . . equipment . . . . A job may be classified semi-skilled where coordination and dexterity are necessary."
 
 
 19
 Carlson described his job duties, or testified that he did the following on the job: built steel parts washers, oil recovery units, water filtering systems, weldments for automation, parts washers, pumps, fixtures, small wall mounts; designed and made welding jigs; performed arc and specialty welding with many different types of welding wire and visual inspection of weldments; and used blueprints, surface grinders, micrometers, the drill press, welding machine, and his personal tools. He testified his work was of the journeyman level. As his work entails working with machines and equipment, inspection for irregularities; and requires coordination and dexterity, Carlson's work is semi-skilled. The vocational expert described this work as semi-skilled, bordering on skilled work.
 
 
 20
 The Secretary's finding that Carlson's position was a semi-skilled one is supported by substantial evidence.
 
 
 21
 Carlson also challenges the Secretary's finding that Carlson acquired transferable skills.
 
 
 22
 Although Carlson cites 20 C.F.R. 404 Subpart P, App. 2, Sec. 201.00(f), which provides that transferability of skills of an older individual must also be based on a finding that the transfer would require very little vocational adjustment, he does not argue this issue beyond citing the rule. The vocational expert testified that "very, very little" vocational adjustment would be required of Carlson to transfer to sedentary work.
 
 
 23
 Carlson primarily attacks the Secretary's finding of transferable skills by arguing that the "skills" the ALJ depended on were mere aptitudes rather than skills. A mere aptitude is not a transferable skill. see Richardson v. Secretary of Health & Human Services, 735 F.2d 962 (6th Cir. 1984).
 
 
 24
 Carlson was correct in identifying several of the factors mentioned by the vocational expert as mere aptitudes. For example, the vocational expert identified dexterity, coordination, concentration, judgment and responsibility as skills. These have been held to be mere aptitudes. See Ellington v. Secretary of Health & Human Services, 738 F.2d 159, 160-61 (6th Cir. 1984); Weaver v. Secretary of Health & Human Services, 722 F.2d 310 (6th Cir. 1983).
 
 
 25
 But, the vocational expert also identified the following as skills: "knowledge of a job that was well done . . . inspection . . ., technical knowledge involved in the different aspects of metal and the welding of metals, utilization of tools and equipment, some machine operation." The vocational expert also stated he was merely attempting to abbreviate the "very good answers" of Carlson. Carlson additionally emphasized his skill with blueprints and jig designs. These are skills acquired on the job, not innate aptitudes. Therefore, this case highly resembles Ingle v. Heckler, 763 F.2d 169, 170 (4th Cir. 1985), where the court held that where the vocational expert lists both aptitudes and skills, such as use of machines and tools, there is substantial evidence to support the Secretary's finding of transferable skills. Therefore, despite the vocational expert's citation to some aptitudes, there is other substantial evidence to support the ALJ's conclusion that Carlson acquired transfeerable job skills.
 
 
 26
 Carlson also claims that therange of employment opportunities available to him is not substantial.
 
 
 27
 The vocational expert testified, and the ALJ found, that there were ten thousand sedentary inspection jobs in Michigan, five thousand of those jobs located in the Detroit area. All of these sedentary positions would be inspection positions in machine operations, assembly-type areas, and packaging. To be suitable for Carlson, the sedentary position had to be located in an environment free of paint fumes, mechanical devices, and chemicals. According to the vocational expert, approximately eight thousand sedentary inspection positions in Michigan existed in such an environment. Four thousand of these jobs were in the Detroit area. In addition, one thousand of these jobs in the Detroit area are also free from oil, grease and soldering fumes. The ALJ did not find Carlson needed this additionally "clean" environment.
 
 
 28
 Contrary to Carlson's claim, the Secretary has met the requirements of O'Banner v. Secretary of Health, Education & Welfare, 587 F.2d 321 (6th Cir. 1978) and Hephner v. Matthews, 574 F.2d 359, 362-63 (6th Cir. 1978), in utilizing a vocational expert to present testimony. O'Banner and Hephner invalidated reliance on intuition, conjecture, and vague catch-all terms, and required a vocational expert's testimony or a more specific finding that a claimant would be capable of performing certain jobs. Here, the finding that Carlson would be capable of performing sedentary inspection jobs in machine operations, assembly type areas and packaging, in a pollution free environment, coupled with a finding of four thousand such jobs in the Detroit area and eight thousand statewide, is supported by substantial evidence and meets the requirements of the statute and regulations that the Secretary show that the claimant has the ability to engage in substantial gainful activity.
 
 IV.
 
 29
 Four additional points warrant summary disposition. First, although one of the three challenges to the Secretary's decision by Carlson was that "there is not substantial evidence to find that his non-exertional limitations do not significantly limit the range of sedentary work," plaintiff failed to address this issue in his brief and apparently abandoned it in his conclusion, stating, "This case can and should be decided on only one factor: Is there substantial evidence to support the finding that Plaintiff has transferable skills?" Considering Dr. Efros' uncontradicted statement that Carlson could return to work in a pollution free environment, the Secretary's decision on this issue of non-exertional limitations beyond the presence of smoke and fumes is supported by substantial evidence.
 
 
 30
 Second, both plaintiff and defendant address whether Carlson's continued smoking is an alternative means of denying him disability benefits. Claimants can be denied benefits for failing to follow prescribed treatment. Awad v. Secretary of Health & Human Services, 734 F.2d 288 (6th Cir. 1984). Dr. Efros prescribed Carlson stop smoking. He has refused to do so because he finds it difficult to stop. Because the Secretary's denial of benefits due to transferable skills is affirmed, we do not reach this question.
 
 
 31
 Third, Carlson's alleged claustrophobia, preventing him from working a sedentary position, is addressed by plaintiff. However, this is not addressed as an additional non-exertional limitation, and is therefore not reached by this court. Further, matters of credibility rest with the ALJ, Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). The ALJ found Carlson's testimony on this point not credible.
 
 
 32
 Fourth, Carlson argues that the vocational expert's testimony "made or unmade the case," but that his testimony should be given no weight. "Since the A.L.J. had the opportunity to observe the demeanor of the [witness], his conclusion with respect to credibility 'should not be discarded lightly."' Houston v. Secretary of Health & Human Services, 736 F.2d 365, 367 (6th Cir. 1984), quoting Beavers v. Secretary of Health, Education & Welfare, 577 F.2d 383, 387 (6th Cir. 1978). The ALJ weighed the expert's credibility; this court will not lightly discard the ALJ's conclusions regarding the credibility of the expert's testimony.
 
 
 33
 The decision of the Secretary is supported by substantial evidence; therefore, the district court is affirmed.