**Doris Jean ALLEN, Plaintiff-Appellant,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant-Appellee.**

No. 77–1486.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 12, 1979.

Decided Jan. 4, 1980.

Walter K. Crawford, Cookeville, Tenn., for plaintiff-appellant.

Hal D. Hardin, U. S. Atty., William H. Farmer, Margaret Huff, Wm. Gary Blackburn, Nashville, Tenn., for defendant-appellee.

Before EDWARDS, Chief Judge, WEICK, Circuit Judge, and PECK, Senior Circuit Judge.

EDWARDS, Chief Judge.

Appellant Allen seeks reversal of a judgment of the United States District Court for the Middle District of Tennessee affirming denial of Social Security disability benefits previously entered on behalf of the Secretary of Health, Education and Welfare on recommendation of an administrative law judge and the Appeals Council. The case involves an obviously difficult administrative and judicial determination of a Social Security disability claim.

Appellant Allen is a now 45-year-old woman who has a medical record that seems well-nigh impossible to have accumulated in her lifetime. Her problems have included a laminectomy, an appendectomy, tubal ligation, herniography, hysterectomy, mastectomy, urinary tract infection, spastic colon, adhesions of the lower bowel, and persistent low back and abdominal pain. No witness at the administrative hearing disputed any part of the preceding portion of this paragraph. The disputed question is: Nonetheless is Mrs. Allen now suffering from "a physical or mental impairment" which is "medically determinable" and has lasted or can be expected to last for a continuous period of at least 12 months?[1]

---

1. 42 U.S.C. § 423 (1976) reads in pertinent part:

(d) **Disability.** (1) The term "disability" means—

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; or

(B) in the case of an individual who has attained the age of 55 and is blind (within the meaning of "blindness" as defined in section 416(i)(1) of this title), inability by reason of such blindness to engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity in which he has previously engaged with some regularity and over a substantial period of time.

(2) For purposes of paragraph (1)(A)—

(A) an individual (except a widow, surviving divorced wife, or widower for purposes of section 402(e) or (f) of this title) shall be determined to be under a disability only if his

Mrs. Allen appeared without counsel before the Administrative Law Judge. Accordingly, her testimony in response to his patient questioning was somewhat disorganized. Mrs. Allen testified that her first (and it appears only) job was in a shirt factory in Cookeville, Tennessee where she worked for a total of 20 years. Her first factory operation was trimming and matching shirt collars. On returning to work after the birth of her second child, she was put to work sewing on neck buttons. When her third child was born, she did not go back to work until 1964. Then, as to type of work and reasons she left the job in July of 1975, she testified:

A. Well, I was—I started out rolling collars. And, that hurt my back so bad, that I took pick-up.

Q. Now, explain what you mean by, pick-up.

A. Well, as the girls would fold shirts, and put them on a table, I would put tags on them, if they had to be, and travel boards in them.

And, then, I would set them on another table for the boxing girls.

And, then,—well, about a week, or 2, before I went to the hospital, they put me on folding. And, I reckon I was gone to, you know, fold and pick-up, too. There wasn't enough work on the pick-up.

And, then,—

Q. And, why did you quit your work in July?

A. Well, I got sick in March of last year.

Q. Sick of what? Got sick from what, ma'am?

A. With my stomach.

Q. Well, you say, March of 1975?

A. Uh-huh.

Q. Now, when you say, you got sick with your stomach. Now, tell me a little bit more about that.

A. Well, I had cramps. I almost doubled up with pain, the way I had cramps.

And, I went to Dr. Shipley (phonetic), and he gave me some medicine. And, it didn't go [sic] any good. And, I went back, and he gave me some more medicine, and put me on a diet of—5 weeks of milk and crackers.

And, so, then, he put me in the hospital in May.

The ALJ also inquired about her medical history before she left work:

Q. Have you ever had an operation, Mrs. Allen?

A. Yes.

Q. What was that for?

A. Well, I—the first one I ever had was appendicitis.

And, then, I had a hernia.

physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

(B) A widow, surviving divorced wife, or widower shall not be determined to be under a disability (for purposes of section 402(e) or (f) of this title) unless his or her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity.

(3) For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

(4) The Secretary shall by regulations prescribe the criteria for determining when services performed or earnings derived from services demonstrate an individual's ability to engage in substantial gainful activity. Notwithstanding the provisions of paragraph (2), an individual whose services or earnings meet such criteria shall, except for purposes of section 422(c) of this title, be found not to be disabled.

(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.

And, I had 2 on my breasts.

And, I had my tubes tied.

And, I had a spinal fusion.

And, I had a hysterectomy, when I was 28.

And, I guess that's all.

Q. Was the hysterectomy the last one?

A. No, sir.

Q. When was the most recent—

A. When was the last one?

Q. —uh-huh—operation?

A. Well, the last one was on my breasts. It's been about 2 years, I guess.

Then, I went to—Of course, I had been to Dr. Francis (phonetic) with my stomach.

And Dr. Alper told me to go to a gynecologist, before—

Q. Where does Dr. Francis have his office?

A. Up here on Cedar Street (phonetic).

Q. And, what did you see him about?

A. I went with my stomach.

Q. And, what did he tell you?

A. Well, he just give me some medicine.

And, Dr. Alper told me to go to a gynecologist, before I came back to him.

So, I went to Dr. James Sholl (phonetic).

Q. Where does he have his office?

A. He's here in Cookeville.

And, he told me that he thought I had a bowel obstruction.

Mrs. Allen's oldest son John also testified under the ALJ's questioning:

Q. Now, will you tell me what you've observed, in the way of her physical problems?

A. Well, on many occasions, I'd come in from school and she'd be lying in on— in bed, and she'll say, "there's not much I've been able to do, today, you know, in the house." And, looks pretty bad, still.

She complains that her back hurts. Her stomach cramping. Numerous headaches.

It seems like—I've never known my mother—truthfully, I've never know my mother to feel really good, like she could, you know,—some thing wasn't bothering her.

Q. Well, she said she attempted to work there in the shirt factory.

You're familiar with the fact that she worked there, haven't you (phonetic)?

A. Yes, sir.

Q. That she quit work there in July of 1975. She's testified.

Now, did you notice her discomfort, or complaints, got greater, or what?

A. Well, we used—she would ride home with us from school. Me, my brother, and sister.

And, many times, she'd have to lay down in the back seat, because she just wouldn't feel well enough to sit up and ride.

And, I had always felt that her working there at the shirt factory did intensive her illness, her ailments.

Four qualified physicians, consulted by Mrs. Allen for treatment of her various problems, provided opinions upon her medical problems and/or continued employability.

Dr. Oscar W. Carter of Carter-Spalding Urological Association of Nashville wrote on August 18, 1975:

We have seen this patient at intervals since 1963 with recurrent bouts of urinary tract infection with a urethral stricture and with a stricture in her lower right ureter.

She has required treatment at intervals of about every three months sometimes more often, sometimes not quite that often. In addition to this she has other medical ailments. We feel that this woman is chronically ill and is probably not able to hold a regular job.

On June 22, 1976, Dr. James W. Shaw provided the following "Discharge Summary" after consultation and examination:

This patient is a 42 year old Gravida III, para III who has had numerous surgeries in the past. Her complaint is a long

standing pain in the left lower quadrant which is continuous and also has intermittent episodes of cramping and bloating, especially when she becomes constipated or after she eats. The patient has been admitted to numerous hospitals and has been worked up for this. An upper GI series, BE, IVP's have all been negative. The rest of her history is in her old charts. The patient is currently being treated by Dr. Oscar Carter for the past 12 years for recurrent, urinary tract problems. On admission the patient's vital signs were normal. She is a well developed, well nourished, somewhat slender white female who appears to be in chronic distress. The cardiopulmonary system was physiologic. There are masses from previous breast masses. There are multiple abdominal scars present on the patient. Pelvic exam revealed only an irregular mass fixed in the pelvis which is tender to palpation on the left side which appears to be small bowel. The admission diagnosis is chronic abdominal pain, probably small bowel adhesions. The patient's admission lab work revealed normal urinalysis with WBC 8620 with normal differential and PCV 38. Gynogram was performed on this patient which showed a loop of small bowel in the pelvis. The gynogram reveals a piece of small bowel stuck down in the pelvis. The patient was scheduled for an exploratory laparotomy the day after the gynogram, however, after explanation of the difficulty in removing adhesions and the possibility of the adhesions reforming, and being possible to cause complete bowel obstruction, it was decided by the patient that she attempt to treat this conservatively for some time to see if she can tolerate it. The patient was discharged on LA formula one tsp t.i.d. after meals, Gaviscon foam tabs 2 after each meal and h.s., Talwin compound 2 tablets every 3 hours pr.n. for pain, Ellavil starting at 25 mg h.s. and then increasing to 75 mg h.s. Septra tablets 1 daily in the morning and the evening, Pyridium one daily in the morning and one in the evening. She was given a follow up visit to the office in 2 weeks.

FINAL DIAGNOSIS: Chronic pelvic pain due to small bowel adhesions with probable intermittent partial small bowel obstruction.

COMPLICATIONS: None

OPERATIONS: None

CONSULTATIONS: None

CONDITION ON DISCHARGE: Unimproved

On August 28, 1975, Dr. Ben Alper provided the following "Discharge Summary" after full examination and clinical tests at the West Side Hospital, Nashville, where she had been under examination and treatment from July 1, 1975 to July 27, 1975:

DISCHARGE SUMMARY: This 43-year old lady was admitted because of abdominal disorder manifested by a lower abdominal cramping. She has been having the symptoms for 3 weeks when she consulted her physician in Cookeville 4 months ago. A mass in her abdomen was suspected and she was hospitalized, but the mass was never confirmed. Her bowel pattern has varied from having 0–5 stools per day, and no diarrhea or mellena noted. She has had intermittent periods of constipation as well. The details of her history and physical are recorded in the admission notes.

Her clinical impression was: 1) Abdominal pain of undetermined etiology, suspect spastic colon, 2) Pulmonary emphysema, rule out.

Sigmoidoscopy examination normal, barium enema and IV pyelogram normal, Treadmill EKG suboptimal undiagnostic.

She was treated with LA formula. Her symptoms subsided. The SMA was normal. Urine culture sterile, white count 8,200 with normal differential, PCV 38%.

DISCHARGE DIAGNOSIS: 1) Spastic colon.

On September 10, 1975, Dr. W. C. Francis provided the following history and comment concerning Mrs. Allen whom he first examined on July 19, 1963 and whom he said he had seen "frequently" in the intervening 12 years:

This patient has been followed by me since July 1963. She has experienced repeative (*sic*) bladder infections and underwent a urethrotomy in 1963 by Dr. Oscar Carter. The patient has had numerous dilatations of the bladder over the years. She was treated by me for a ruptured disc in July 1966 and a chronic mechanical low back strain. She was hospitalized initially for her ruptured disc. The patient has also experienced a cystocoele and rectocoele. She underwent a simple mastectomy and a urethral dilatation by me in October 1970.

This patient has experienced marked weakness, easy fatigability and severe back pain over the past months. She has been unable to work due to her marked weakness, fatigability, chest pain, and back pain. When last seen by me on 9–5–75 she was having symptoms of angina pectoris due to coronary artery insufficiency, severe low back pain, bladder spasms, marked weakness and fatigue.

The patient appeared frail with marked tension and nervousness. Due to her chronic back strain, ruptured disc, chronic G. U. Tract infections, angina pectoris due to coronary artery insufficiency, and her marked tension from her physical condition, I believe this patient will be permanently disabled to hold down a gainful occupation.

As compared to these four doctors who have been intimately concerned with Mrs. Allen's care, both while she was working and after, the Administrative Law Judge relied in finding no "disability" upon three examinations made at the request of either Social Security or the Disability Determinations Section of the State of Tennessee. One of these doctors was a psychiatrist, Dr. Asher, who opined that he could not "evaluate due to excessive medication." The second was a clinical psychologist, Dr. Copple, who said "I do not find a psychological condition of sufficient severity to prevent gainful employment." The last of these physicians was Dr. Rembert who had a series of tests conducted and furnished this "Comment" to the Disability Section:

Comment: I think her most likely problem is chronic anxiety and depression. Certainly she had some back surgery about seven years ago there seems to be no difficulty with that now. She has appropriate care for her urinary tract problem. There are no symptoms which suggest angina or any cardiac disease at this time. The masters was within normal limits. All in all I think her problems are psychological in origin and I do not see any permanent disability.

Thank you for allowing me to see her.

Dr. Rembert also checked a form furnished by the Disability Determination Section to indicate "light work."

From these medical reports and the testimony of Mrs. Allen and one of her sons, the ALJ deduced the following findings:

1. The claimant met the special earnings requirements for disability purposes in July of 1975, the date when she stated she became unable to work; and she will continue to meet them at least through the date of this decision.

2. The claimant is approximately 41 years of age, has completed three years in high school and has worked in a shirt factory for some 20 years.

3. The evidence shows that the claimant has no significant kidney, bladder, back, or urinary tract problem. There is nothing to suggest angina or cardiac disease.

4. Although not capable of heavy manual labor, the claimant is otherwise able to function in a normal manner, both mentally and physically.

5. Considering the claimant's physical and mental abilities, her age, her education and work history she would be able to do her regular job inserting tags and travel boards in shirts as well as folding shirts and these jobs are present in the region where the claimant lives.

6. The claimant was not prevented from engaging in substantial gainful activity, on or before the date of this decision, for any continuous period

which has lasted or could be expected to last for at least 12 months.

7. The claimant was not under a "disability" as defined in the Social Security Act, as amended, at any time on or before the date of this decision.

The Appeals Council, the Secretary and the District Court affirmed these findings.

The only question before this court is whether there is "substantial evidence" on this whole record to support the no disability finding entered by the ALJ, the Secretary and the District Judge.

 We begin our analysis of this case by pointing to four legal propositions which have been repeatedly endorsed by this Circuit in Social Security disability cases:

1. The burden of proof in a claim for Social Security benefits is upon the claimant to show disability which prevents her from performing any substantial gainful employment for the statutory period. Once, however, a prima facia case that claimant cannot perform her usual work is made, the burden shifts to the Secretary to show that there is work in the national economy which she can perform. *Hephner v. Mathews,* 574 F.2d 359, 361 (6th Cir. 1978); *Garrett v. Finch,* 436 F.2d 15, 18 (6th Cir. 1970).

2. Convincing proof, consisting of lay testimony supported by clinical studies and medical evidence, that pain occasions a claimant's inability to perform his or her usual work is sufficient to make a prima facia case. *Beavers v. Secretary of Health, Education and Welfare,* 577 F.2d 383 (6th Cir. 1978); *Noe v. Weinberger,* 512 F.2d 588 (6th Cir. 1975).

3. In determining the question of substantiality of evidence, the reports of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim. *Whitson v. Finch,* 437 F.2d 728, 732 (6th Cir. 1971); *see also Giddings v. Richardson,* 480 F.2d 652 (6th Cir. 1973).

4. Substantiality of the evidence must be based upon the record taken as a whole. *Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973).

 Applying these principles, we hold that the evidence in this record upon which the ALJ based his finding was not "substantial" within the meaning of the statute.[2]

---

2. 42 U.S.C. § 405(g) (1976) reads:

**(g) Judicial review.** Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Secretary or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Secretary, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations. The Court shall, on motion of the Secretary made before he files his answer, remand the case to the Secretary for further action by the Secretary, and may, at any time, on good cause shown, order additional evidence to be taken before the Secretary, and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or its decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and

The opinion of the psychiatrist was never expressed and that of the clinical psychologist, of course, went only to whether or not she was psychologically disabled. This record affords no medical evidence of psychological disability.

This leaves Dr. Rembert's examination, diagnosis and "light work" check mark as the foundation of the ALJ and the Secretary's denial of benefits. Dr. Rembert opined that he "did not see any permanent disability." As to this now 45-year-old woman, we would profoundly hope this might prove to be the case. Our question, however, is whether or not she has been or will be disabled from "any substantial gainful employment" for 12 months or more. We are convinced she has been and may be; but we certainly do not rule out the possibility that time and medical treatment will alleviate the problems testified to above so as to allow her return to the work she desires to resume. If so, the Secretary has ample means to terminate benefits. *See* 42 U.S.C. § 425.[3]

In *Beavers v. Secretary, supra,* Judge Peck wrote for this court:

The Appeals Council does not appear to be saying it does not believe claimant, but rather that a necessary predicate to considering his testimony, "relevant abnormal findings," is absent. Yet there are clearly relevant, medical "abnormal findings" in evidence, establishing a bona fide physical problem which could be the source of his difficulties. There is no requirement that the underlying medical basis for subjective complaints of pain

clearly indicate that such pain would be inevitable. If that were the case, there would be no occasion for subjective, personal testimony in a disability hearing, and a person with pain which eludes precise diagnosis would be excluded from the protection offered by the Social Security disability system. Pain is a highly subjective phenomenon, and each person has an individual "threshold of pain," beyond which he or she is unable to ignore pain and function normally. Determining in an individual case whether suffering has exceeded that threshold, rendering the individual disabled, is necessarily a personal inquiry, and depends heavily on the credibility of the claimant. The plaintiff in this case has provided the Secretary with extensive medical evidence establishing the existence of several physical problems, including a foreign object lodged in his spine, a missing kidney and spleen, degenerative disc disease and arthritis. He has documented a long history of fruitless treatment for severe headaches and leg and back pain. The extent to which these physical problems have resulted in total disability requires further inquiry into the subjective personal testimony by the plaintiff describing his pain.

Although it does not say so explicitly, the Appeals Council could have been following a different path in rejecting the plaintiff's testimony. Its opinion could be interpreted as holding that given the apparently minor abnormalities demonstrated by the medical evidence, Beavers' testimony about his pain was simply not

testimony upon which his action in modifying or affirming was based. Such additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision. The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions. Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Secretary or any vacancy in such office.

**3.** 42 U.S.C. § 425 (1976) reads, in pertinent part:

If the Secretary, on the basis of information obtained by or submitted to him, believes that an individual entitled to benefits under . . . [42 USC § 423], . . . may have ceased to be under a disability, the Secretary may suspend the payment of benefits under such . . . [42 USC § 402(d), (e), or (f) or 423] until it is determined (as provided in [42 USC § 421]) whether or not such individual's disability has ceased or until the Secretary believes that such disability has not ceased, . . . For purposes of this section, the term "disability" has the meaning assigned to such term in [42 USC § 423(d)].

credible. If this was in fact its reasoning, we again conclude that the result is not supported by substantial evidence.

577 F.2d at 386.

In *Hephner v. Mathews, supra,* Judge Weick wrote for this court:

A finding of a capacity to do light work does not constitute evidence that a person can engage in substantial gainful activity, nor is such a finding sufficient to rebut a prima facie case of disability. A claimant's capacity to perform work must be evaluated in light of *his* age, *his* education, *his* work experience, and *his* impairments, including *his* pain. This requires a finding of capacity to work which is expressed, not in terms of a vague catch-all phrase such as "light" work, but in terms of specific types of jobs. *Garrett v. Finch, supra* at 18; *Lane v. Gardner,* 374 F.2d 612, 616 (6th Cir. 1967); *Massey v. Celebrezze,* 345 F.2d 146, 157 (6th Cir. 1965); *Rice v. Celebrezze,* 315 F.2d 7, 15–17 (6th Cir. 1963). *See also Whitson v. Fitch,* 437 F.2d 728, 732 (6th Cir. 1971).

574 F.2d at 362 & 363.

In our opinion, the finding by the Secretary that appellant can engage in substantial gainful employment is not supported by this record taken as a whole.

 We have considered Dr. Copple's reference to a possible "decline in motivation." There may well have been a cumulative effect over the course of years produced by Mrs. Allen's physical problems, the many surgical procedures employed to deal with them and the medications prescribed and taken to offset pain occasioned by both the problems and the surgery. The human anatomy is, after all, one organism—even though doctors do not always treat it as such.

We do not, however, find this possibility to be a basis for denial of disability. Mrs. Allen can hardly be faulted for accepting the medical advice which was available to her nor can she be faulted for failure of the

medical procedures and treatment to return her to a condition where she can work without disabling pain. Mrs. Allen's financial situation (one wage earner's income in the $5,000–$6,000 range for five people),[4] would normally supply motivation to return to work. There are no suggestions of malingering in the opinions of the doctors or in the ALJ's findings. Since Mrs. Allen did work at a factory job for many years in between childbirths and the astonishing series of operations referred to above, she had obviously demonstrated a considerable inclination toward employment.

The judgment below is vacated and the case is returned to the District Court for remand to the Secretary for award of benefits.

---

4. Tuition costs for the two college students may be offset partially or wholly by an ROTC stipend of $100 per month for nine months for one son, and an assistantship for the other son.