762 F.2d 1014
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
SIDNEY WHITEHEAD, PLAINTIFF-APPELLANT,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, DEFENDANT-APPELLEE.
 NO. 84-5220
 United States Court of Appeals, Sixth Circuit.
 3/27/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR EASTERN DISTRICT OF KENTUCKY
 BEFORE: MARTIN and JONES, Circuit Judges; and PORTER, District Judge.*
 PER CURIAM.
 
 
 1
 Appellant, Sidney Whitehead, appeals the district court's grant of summary judgment, which affirmed the Secretary's denial of social security disability benefits. Upon consideration of the issues presented by the appeal, we affirm.
 
 
 2
 Whitehead was born on May 1, 1931. He has a third or fourth grade education but can only write his name. As a laborer, he spent five years in a sawmill, thirteen years in a coal mine, and eight years in a factory. Whitehead is married and has one child who may be over twenty-one.
 
 
 3
 In 1962 Whitehead was injured in a rock fall at the coal mine. It appears that he drew social security disability benefits and worker's compensation for a period of time. Nevertheless, on July 10, 1974, he filed an application for disability benefits. After that claim was denied, initially, upon reconsideration, by an ALJ, and by the Appeals Council, Whitehead sought judicial review by filing suit in the district court. The district court remanded for a second hearing, which also resulted in the denial of his claim. The Appeals Council adopted the ALJ's decision and the district court redocketed the case.
 
 
 4
 While that action was pending, Whitehead filed another application for Title II benefits. That application was also denied, initially, upon reconsideration, by the ALJ, and by the Appeals Council. Again, Whitehead sought judicial review. That action, therefore, was consolidated with his other pending civil action. On cross-motions for summary judgment, the district court affirmed the Secretary's denial of benefits. Whitehead now appeals.
 
 
 5
 Appellate review of the Secretary's decision to deny social security disability benefits is limited to determining whether there exists substantial evidence on the record, as a whole, to support findings that the claimant is not disabled within the meaning of Title II. See Richardson v. Perales, 402 U.S. 389 (1971). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 401, (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).
 
 Medical Evidence
 
 6
 Dr. Siehl, a doctor who is not listed in the American Medical Directory, first examined Whitehead on October 11, 1968. He diagnosed virus influenza. On December 10, 1968, March 12, 1970, March 16, 1970, and January 22, 1974 he diagnosed a cold. On February 18, 1974 he diagnosed nervousness.
 
 
 7
 On February 27, 1973, Dr. Craig, reviewed Whitehead's pulmonary function study. His impressions were that Whitehead's forced vital capacity was reduced but that his flow rates were normal. Craig also noted that his MVV rate was reduced but that the reduction was probably due to Whitehead's failure to cooperate. Consequently, Craig concluded that the limited studies suggest a restrictive lung disorder of a mod rate degree, that chemical correlation was necessary, and that the studies should be repeated in the future for confirmation.
 
 
 8
 Dr. Shampton, a general practitioner, who examined Whitehead from August 13, 1973 until September 28, 1973, simply noted in a summary report that he diagnosed anxiety depression.
 
 
 9
 Dr. Miller, an orthopedic surgeon, examined him on August 12, 1974 and concluded that Whitehead had a relatively mild compression fracture of L-3 that had healed satisfactorily. Although he believed that the fracture, however, could interfere with heavy or strenuous physical labor on a sustained basis, Dr. Miller saw no other objective evidence of orthopedic functional limitations. Dr. Miller did not evaluate Whitehead's complaints regarding his pulmonary function and nerves.
 
 
 10
 On August 14, 1974, Dr. Jarboe, an internal medicine specialist, noted the results of Whitehead's pulmonary function studies and stated that he gave 'poor effort' and found 'no apparent physical reason' for the results.
 
 
 11
 On January 31, 1976, Dr. Wright, who has an unclassified practice, noted Whitehead's history, reviewed his systems, examined him physically and neurologically, and reviewed his spirogram, chest x-ray, and lumbar spine x-ray. Dr. Wright's impressions were that Whitehead had chronic bronchitis and chronic anxiety. Dr. Wright commented that there was no evidence that Whitehead had a significant physical impairment. Instead, Whitehead had a full free range of motion of all of his joints without any evident restriction in his physical activity.
 
 
 12
 Dr. Bowling, a general practitioner, on August 14, 1976, stated three diagnoses: (1) broken back, (2) black lung, and (3) left eye injury. All three conditions, according to Dr. Bowling, were moderate and not severe or mild. Dr. Bowling, however, stated that Whitehead could not do heavy, moderate, or light lifting. Dr. Bowling stated further that Whitehead could not stand and work with his arms and hands while operating hand or foot controls for 6-8 hours.
 
 
 13
 Dr. Hunter, a neurological surgeon, examined Whitehead on June 9, 1976 and stated that he had a 'ruptured inter-vertebral disc at L5-S1, residuals of a facture of the left orbit, and a sprain of the cervical spine.' He concluded that Whitehead was 'totally disabled at that time for gainful employment and ha[d] been so for the past two years.' Hunter opined that it was 'unlikely that he would recover without surgical intervention' and 'anticipate[d] persisting total disability in the future for a minimum period of 12 months, if not permanently.'
 
 
 14
 Dr. Bushey, an internal medicine specialist, examined Whitehead on December 22, 1976 and stated that he had black lung, recurrent respiratory infections, but no operations. Bushey noted that since his accident, Whitehead had some pain in his head and back all the time. Occasionally, Whitehead had double vision and some nocturnal difficulty in closing his left eye. Whitehead, according to Bushey, has difficulty opening his mouth and has a locking sensation to the left. Upon exertion, Whitehead's pain became worse and upon lifting or moving his back pain became aggravated. Bushey further noted that Whitehead's pain sometimes extended into his right leg posteriorly.
 
 
 15
 On September 21, 1979 Dr. Dahhn, who specializes in pulmonary diseases and internal medicine, opined that Whitehead had old compression fractures in the thoracic and lumbar spine, osteoarthritis, chronic bronchitis, and pneumoconiosis, as well as anxiety. Dr. Dahhan thought that those conditions prevented Whitehead from being gainfully employed.
 
 
 16
 Dr. Hunter examined Whitehead again on June 12, 1980 and found that he continued to have a ruptured intervertebral disc at L-5, S-1 and a bilaterial spinal nerve root compression. According to Dr. Hunter, Whitehead was still totally disabled for his usual occupation and would reasonably be expected to remain totally disabled for any type of gainful occupation for an additional twelve month period.
 
 
 17
 The above medical evidence presents conflicting medical conclusions. Doctors Hunter and Dahhan believed that Whitehead is totally disabled. Dr. Bowling believed that he cannot do any lifting of a heavy, moderate, or light nature, cannot stand and work with his arms and hands, and cannot operate hand or foot controls for six to eight hours. Dr. Wright, however, believed that Whitehead had no significant physical impairment and no evident restriction in his physical activity. Similarly, Dr. Miller found no objective evidence of orthopedic functional limitations but noted that his old mild, compression fracture could interfere with heavy or strenuous physical labor. Both Doctors Craig and Jarboe noted some decrease in his pulmonary function but noted further that Whitehead failed to cooperate.
 
 
 18
 Whitehead, the Secretary, and the district court each recognized the conflict presented by the medical evidence. Resolution of that conflict is part of the ALJ's responsibility. Richardson, 402 at 399. In making that resolution, the ALJ must accord more weight to the reports of 'treating physicians' than to the reports of other physicians. Kirk v. Secretary, 667 F.2d 524, 536 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). A 'treating physician' is a physician who has 'treated the claimant/patient over a number of years' and is not a physician 'employed and paid for by the government for the purpose of defending against a disability claim.' Id. By that definition all of the physicians noted above are treating physicians. Hence, their reports should be accorded equal, albeit contradictory weight.
 
 
 19
 We defer to the ALJ's resolution of the conflicting medical evidence. The ALJ was not bound to accept the conclusions of total disability rendered by Doctors Hunter and Dahhan. Instead, he was to consider those conclusions as he reviewed the evidence "as a whole" Id. (quoting, Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1981)).
 
 
 20
 We, therefore, AFFIRM.
 
 
 
 *
 The Honorable David S. Porter, Senior District Judge, United States District Court for the Southern District of Ohio, sitting by designation