811 F.2d 605
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Kenneth GOODMAN, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-5235.
 United States Court of Appeals, Sixth Circuit.
 Dec. 15, 1986.
 
 Before LIVELY, Chief Circuit Judge and MARTIN and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Kenneth Goodman appeals the third denial of his application for Social Security disability benefits. He alleges disability because of severe, post-surgical, lower back pain and contends that the administrative law judge's finding that his severe impairment did not meet the severity of any listing was not based on substantial evidence. For the reasons stated below we disagree, and affirm the judgment of the district court.
 
 
 2
 Kenneth Goodman is a forty-six year old man with a sixth grade education who can write his name but cannot read. His past relevant work has been as a coal miner, coal truck driver, sawmill operator and timber cutter. He last worked as a coal miner, but injured his back on March 2, 1982, doing heavy lifting on the job. It should also be noted that Goodman has an eighty-two percent, permanent, impairment of his right thumb due to a 1977 accident and subsequent surgery. This results in a thirty-three percent impairment to his right hand.
 
 
 3
 After his back injury, Goodman continued to work until March 23, 1982, when the increase in his pain caused him to go to the emergency room at Oak Ridge Hospital. He was seen by Dr. Geron Brown who admitted him and noted that while in the hospital Goodman's leg pain apparently worsened. An Amipaque myelogram was performed on March 29, the result of which was a finding of extrinsic compression both on the left and central at the level of L-4/5, consistent with a herniated nucleus pulposus. Goodman was also found to have degenerative disk disease at that level, and a sacralization of the fifth lumbar vertebra. Dr. Brown decided to treat Goodman's problems conservatively with epidural steroids, rest, and medication. He discharged Goodman on April 2, 1982, and instructed him not to return to work until further notice, finding him temporarily totally disabled. Goodman filed his first application for disability benefits on August 20, 1982, which was denied. He did not appeal the decision.
 
 
 4
 Goodman's back and leg pain did not substantially improve and on September 19, 1982, he was readmitted to the hospital for further evaluation with an eye toward a laminectomy. A CT scan of the lumbar spine revealed a bulging annulus at the L-4/5 and L-5, S-1 midline slightly to the left. After seeing these results, Dr. Brown determined that a laminectomy was in order, and surgery was scheduled for September 27. Goodman was discharged on the twenty-first to be readmitted on the twenty-sixth.
 
 
 5
 Goodman underwent a decompression laminectomy at L-4/5 on September 27, and was discharged October 4, with a diagnosis of degenerative disk disease, L-5 and S-1, and L-4/5 bulging annulus. Dr. Brown's follow-up reports indicate that Goodman's leg pain was alleviated by the operation but that his back continued to bother him. Brown prescribed a back brace and started Goodman on an exercise program. Both of these things appeared to help Goodman, though he found the brace annoying to wear. During 1983, Goodman continued to see Dr. Brown, who noted that his motion in the lumbar area was significantly restricted in that he was unable to reverse the lumbar curve without evidence of spasm. He went on to observe at least a twenty-five percent decrease of spinal motion in all planes. At that time, Dr. Brown recommended further surgery, indicating that it was his opinion that Goodman was one of the few patients he had seen who he thought would benefit from spinal fusion. Goodman was apparently terrified of additional surgery and declined to get a second opinion despite Dr. Brown's suggestion that he do so. On November 8, 1983, Dr. Brown concluded that Goodman had "a twenty to twenty-five percent permanent impairment to the body as a whole" and that he was "occupationally, ... one hundred percent disabled at [that] time." Goodman had filed his second application for benefits on June 17, 1983. It was denied on July 18, and he did not appeal.
 
 
 6
 Goodman filed his third application for benefits on March 2, 1984, and on April 12, 1984, he was examined by orthopedic surgeon Dr. Robert Patterson, at the request of the Social Security Administration. Dr. Patterson based his conclusions both on his objective examination of Goodman and the reading of Dr. Brown's records. Dr. Patterson observed that Goodman continued to experience local lumbosacral region discomfort due to residuals of the decompression laminectomy, and that X-rays showed degeneration of the L-4/5 disk space. While the findings suggested a possible mechanical instability problem, Dr. Patterson found no marked evidence of residual nerve root involvement, and no severe limitation of low back motion. Dr. Patterson also found no muscle weakness, no muscle atrophy, and no muscle spasm. He observed that Goodman squatted and rose normally, could walk on his tiptoes, heels, and outer sides of his feet, could flex his lower back easily sixty-five degrees, could reach to about twelve inches from the floor with good lumbar curve reversal, and did a sit-up with no complaint. Goodman described the pain in his lower back as "pulling discomfort only" which did not radiate.
 
 
 7
 As a result of the hearing conducted on October 11, 1984, the administrative law judge concluded that Goodman's complaints of pain and limitation of motion were credible, that he did have a severe impairment, and that he was unable to perform his past relevant work as a coal miner. He also found that Goodman had a limited education, and that he did not have any acquired work skills which were transferable to the skilled or semi-skilled activities of other work. However, he concluded that Goodman's combination of impairments did not meet the severity of any listing and that his age indicated that his exertional capacity would allow him to do sedentary work with a sit or stand option.
 
 
 8
 On appeal, Goodman argues that the administrative law judge gave undue weight to the report of the consultative physician as opposed to that of the treating physician. He also contends that the hypothetical question posed to the vocational expert did not contain an accurate summary of his impairments, and that his pain was not properly considered. He states that the vocational evidence offered by the expert failed to show there were significant numbers of jobs he could perform in the local economy.
 
 
 9
 After considering each of these points, we believe that the administrative law judge's decision was nonetheless supported by substantial evidence. First, Goodman has established that he suffers from a severe impairment which prevents him from performing his past relevant work. Thus, he has established a prima facie case and the burden shifts back to the Secretary to show that there is work he can perform in the national economy. Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980). Reports of physicians who have treated a patient over a period of time are entitled to greater weight than those of physicians employed by the government for the purpose of defending against a disability claim. Allen at 145. However, in this case it is our opinion that the Secretary has upheld his burden and that the reports of the physicians are not so divergent as to make the administrative law judge's conclusions improper.
 
 
 10
 Here, Dr. Brown's report stated that Goodman was disabled "at this time," (in 1983), however, it was his opinion that spinal fusion would be of great benefit to Goodman. The magistrate who reviewed the administrative law judge's findings concluded that the administrative law judge reasonably interpreted Dr. Brown's opinion that Goodman is "one hundred percent disabled occupationally" to apply to his work as a coal miner. This interpretation is supported by his later notation that Goodman suffered a twenty to twenty-five percent impairment to his body as a whole. Dr. Patterson and Dr. Brown agree in their diagnoses of Goodman based on the x-rays, and the administrative law judge's findings are in accord. The most significant difference in the reports of the doctors is that Dr. Brown's notes contain numerous references to Goodman's own statements concerning pain and limitations, while Dr. Patterson's report contains the results of objective tests. In addition, Dr. Patterson's tests demonstrated that Goodman could arch his low back 20 degrees without complaint while Dr. Brown noted there was significant restriction. Goodman failed to seek opinions from other physicians which might help to refute Dr. Patterson's findings. The administrative law judge was reasonable in his reliance on these results, and they constituted substantial evidence for his decision.
 
 
 11
 Goodman also objects that the hypothetical question posed to the vocational expert lacked information about his inability to climb, stoop, crawl or bend. We find that once the administrative law judge had made the determination that Goodman could only perform sedentary work with a sit or stand option, it goes without saying that he cannot stoop, crawl or bend. In addition, a sit or stand option indicates that an employee may choose whether to sit or stand, and a job which would require him to do one or the other for definite periods of time would not be within the category mentioned. Thus, we believe that the vocational expert had sufficient information on which to base his findings.
 
 
 12
 Goodman also attempts to show that the necessity of a sit or stand option so limits his job opportunities that the vocational expert's testimony was not proper. He argues that two of the three jobs listed by the vocational expert are listed in the addendum to the Dictionary of Occupational Titles as "light work" rather than "sedentary work." At the time the magistrate reviewed the record, Goodman did not cite to the Dictionary of Occupational Titles and the magistrate properly found that there was no evidence to support the finding that these jobs were not sedentary work. Here we find that this issue was not raised at the hearing and we lack the ability to review each fact in the case. The parties agree that at least one of the jobs listed by the vocational expert (card machine operator) is sedentary. In addition, it does not appear that the list offered was exhaustive. With respect to the jobs of ticket printer and gate tender, the vocational expert described the requirements of these positions and stated that Goodman would be capable of performing them. That these jobs may fall outside a classification in a book not in evidence does not indicate that the Secretary failed to meet his burden of proof.
 
 
 13
 Based on our review of the record as a whole we find the Secretary's decision was supported by substantial evidence. We affirm the judgment of the district court.