831 F.2d 296
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Thaddeus PEACHOCK, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 86-3973.
 United States Court of Appeals, Sixth Circuit.
 Oct. 23, 1987.
 
 Before BOYCE F. MARTIN and DAVID A. NELSON, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Appellant, Thaddeus Peachock, appeals from the judgment of the United States Magistrate which denied his motion for judgment on the record, affirmed the decision of the Secretary denying Peachock disability benefits, and entered judgment for the Secretary in his action brought under 42 U.S.C. Sec.405 (g) . Appellant claims that the magistrate erred in finding that the decision was supported by substantial evidence and in not considering new medical evidence. For the following reasons, we affirm the judgment of the magistrate.
 
 I.
 
 2
 Peachock was born on January 15, 1941. He has an eighth grade education. He has past relevant work experience as a route salesman servicing vending machines. In October of 1980, Peachock strained his back picking up a case of ham hocks. After a short disability leave, Peachock returned to work, but reinjured his back in February of 1981 and has not returned to work since that time.
 
 
 3
 Peachock filed an application for disability insurance benefits on November 12, 1981. His request was denied initially and upon reconsideration and he filed a request for a hearing. A hearing was held before an Administrative Law Judge (ALJ) on July 16, 1982. On December 30, 1982 a decision was issued finding Peachock not disabled. On April 11, 1983, the Appeals Council denied Peachock's request for review and the decision became the final decision of the Secretary.
 
 
 4
 On June 3, 1983, Peachock filed an action for judicial review pursuant to 42 U.S.C. Sec.405(g). The case was referred to United States Magistrate David Perelman for the conduct of all further proceedings and the entry of judgment in accordance with 28 U.S.C. S636 (c) . Section 636 (c) (3) permits the direct appeal from the judgment of the magistrate. The case was remanded to the Secretary. The remand order indicated that the evidence did not support a finding that the claimant did not have a severe impairment and the case was remanded to update the record and possibly use the services of a medical advisor to interpret the evidence.
 
 
 5
 A second administrative hearing was held on December 19, 1985. Peachock and a medical advisor testified at the hearing, at which Peachock was represented by counsel. The following evidence was introduced at this hearing.
 
 
 6
 At all relevant times, Peachock was under the care of Dr. John Esarco, a chiropractor. Dr. Esarco examined Peachock on several occasions, and continuously maintained that Peachock was disabled due to his back impairments.
 
 
 7
 On March 25, 1981, Peachock underwent a CT scan of the lower lumbar and upper sacral spine. Results showed moderate narrowing of the spinal canal which is related to hypertrophy of the posterior element and sclerosis and narrowing of the apophyseal joint. X-rays taken at Youngstown Osteopathic Hospital on June 29, 1981, revealed minimal spondylosis throughout the lumbar spine, with minimal osteoarthritis of the lumbar spine. Diagnosis upon discharge was lumbar strain with somatic dysfunction of the lumbar spine.
 
 
 8
 On January 20, 1982, the claimant underwent a consultative examination by Herbert A. Parris, M.D. at the request of the Bureau of Disability Determination. X-rays of the lumbar spine showed mild degenerative changes at L2-L3. Dr. Parris noted that Peachock was able to rise from the chair or get on or off the table with mild discomfort. Parris' impression was chronic low back pain.
 
 
 9
 On July 14, 1982, claimant was examined by L. M. Mikolich, M.D. Mikolich made the following conclusions: "with consideration of a possible spinal nerve root compression [Peachock] should avoid both moderate and heavy working conditions.... I remain somewhat elusive as to the diagnosis mainly because I do not feel that Mr. Peachock has been thoroughly evaluated."
 
 
 10
 Peachock was hospitalized at Saint Elizabeth's Hospital in Youngstown, Ohio from March 24, 1983 until March 30, 1983. After a myelogram was performed, the study showed a very minimal ventral indentation upon the contrast column at the L4-L5 disc space level. Claimant, though, complained that his pain was getting progressively worse but denied any radiation of pain into the legs or any weakness.
 
 
 11
 On December 17, 1984, a CT scan and lumbarmyelogram revealed a herniated nucleus pulposis L4-L5 bilaterally, neuroforamina narrowing on the left at L5 and retroliththesis of L4 and L5.
 
 
 12
 Claimant was again hospitalized at Saint Elizabeth's from January 27, 1985 until February 5, 1985. On January 28, 1985, claimant underwent a semihemilaminectomy, L4-5, bilaterally. Final diagnosis upon discharge was lumbar herniated disc, L4-5 and diabetes mellitus.
 
 
 13
 On August 14, 1985, claimant was examined by Dr. Mikolich. After reviewing the claimant's medical history, Dr. Mikolich reported that the claimant is status post laminectomy with residual pain snydrome. Dr. Mikolich opined that claimant either demonstrates an element of instability in the back or possible arachnoiditis.
 
 
 14
 On August 26, 1985, claimant was examined by Michael P. Stanich, D.O., for the Bureau of Disability Determination. Dr. Stanich reviewed the claimant's history and reported on Claimant's complaints of pain upon movement. Physical examination revealed that claimant ambulated with an antalgic limp. Straight leg raising was positive in the supine position. Final diagnosis was chronic lumbar myositis, evidence of radiculopathy of the right lower extremity with involvement L5, Sl nerve roots and clinical evidence of facette syndrome of the lumbar spine. Dr. Stanich concluded that Peachock will be able to frequently lift ten pounds and should be able to stand or walk two to five hours in an eight hour day.
 
 
 15
 On September 23, 1985, Chander M. Kohli, M.D., reported on the claimant's condition. Dr. Kohli reviewed the claimant's recent medical history and reported that a neurological examination performed on March 5, 1985 revealed equivocal SLRT and paravertebral muscle spasm of 3k. Sensations were diminished in the right lower extremity and the ankle and knee jerks were diminished bilaterally. Dr. Kohli added that the claimant's back and leg pain was causing a lot of anxiety and spasms.
 
 
 16
 At his hearing,[1] Peachock testified that he had "extreme pain in his right side, in my right leg and down my buttocks." He testified that the pain was constant but that sometimes it was lighter than other times. He also testified that he had soreness in his shoulders and neck. He stated that he could only stand or sit for fifteen minutes at a time. He felt he could pick up and carry five to ten pounds.
 
 
 17
 Dr. Joel Steinberg, a medical advisor, also appeared and testified at the hearing. He summarized the claimant's record as showing a significant orthopedic impairment. He divided his discussion into the time periods before and after December 1984. Before December 1984 the claimant had suffered an injury to his back but there were only minor local findings such as periodic spasm and tenderness but no major localizing pathology. All myelograms, CAT scans, lumbosacral x-rays and physical examinations showed minimal to absent findings. The diagnosis was generally mechanical low back pain. He then testified that in December 1984 a CT scan and myelogram showed a L4-5 herniated disc on both sides. Dr. Steinberg then summarized the following events which occurred after December 1984. On January 28, 1985, the claimant underwent hemilaminectomies and disc removal. After that, the findings were variable. Two doctors concluded that the claimant had weakness of the right extensor hallucis longus, two found it questionable. One doctor found weakness of the left extensor hallucis longus and one found it questionable. Most physicians reported symmetrical reflexes except for one who found reduced right ankle jerk and knee jerk but also stated that deep tendon reflexes were present and equal. Dr. Steinberg concluded that the record showed no evidence of atrophy or major weakness.
 
 
 18
 Dr. Steinberg testified that he was familiar with the listings of impairments in the Social Security Regulations. It was his opinion that the claimant did not meet or equal any listed impairment, especially those pertaining to back impairments because there is no significant persistent reflex changes, weakness or atrophy. He opined that the claimant suffers from mechanical low back instability which would limit weights the claimant could lift and would limit excessive twisting, bending and stooping. It was his opinion that the claimant could perform medium work prior to December 1984, could not have performed work while convalescing but could currently perform light to medium work.
 
 
 19
 After considering the evidence, the ALJ issued his decision on January 28, 1986. The ALJ found that Peachock had a severe impairment related to his back, which prevented him from performing his past relevant work, but did not meet the criteria of a listed impairment in 20 C.F.R. pt. 404, subpt. P, app. 1. He also found that Peachock could perform a full range of light work and some medium work and that his subjective complaints of pain were not consistent with his impairments and were not supported by objective medical evidence. Considering Peachock's age, work capacity, education, and prior work experience the ALJ determined that the vocational guidelines, 20 C.F.R. pt. 404, subpt P, app. 2, directed a conclusion that Peachock was not disabled. Accordingly, the ALJ held that Peachock was not entitled to disability benefits.
 
 
 20
 On April 17, 1986, the Appeals Council again denied Peachock's request for review, and the decision became the final decision of the Secretary. On August 5, 1986, Peachock filed a motion for a judgment on the record with the district court. Peachock at that time presented a psychiatric report concerning his depression to the magistrate for his consideration. The claimant received this report on February 18, 1986, nearly two months before the Appeals Council rendered its decision. Peachock, however, did not submit this report to the Appeals Council. On September 10, 1986, the magistrate issued a Memorandum Opinion and a Judgment Order finding in the Secretary's favor and denying Peachock's disability claim. The memorandum did not address the psychiatric report. Peachock timely appealed from this Judgment.
 
 
 21
 Appellant argues that the ALJ applied the wrong standards in considering his allegations of pain and that he should be granted a period of disability based upon disabling pain. He also argues that the magistrate erred in not considering the new evidence presented to him after the ALJ reached his decision.
 
 II.
 
 22
 Pursuant to 42 U.S.C. Sec. 405(g), the findings of the ALJ are conclusive if they are supported by substantial evidence. Accordingly, our review is limited to determining whether there is substantial evidence in the record to support the findings. " 'Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 525 (1981) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)), cert. denied, 461 U.S. 957 (1983). In determining this question, we examine the evidence in the record "taken as a whole." Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).
 
 
 23
 This court has held that subjective complaints of pain may support a claim of disability. Noe v. Weinberger, 512 F.2d 588 (6th Cir. 1975). See also Beavers v. Secretary of Health, Educ. & Welfare, 577 F.2d 383 (6th Cir. 1978). It is also well recognized that credibility determinations related to subjective complaints of pain rest with the ALJ whose opportunity to observe the demeanor of the claimaint "is invaluable and should not be discarded lightly." Kirk, 667 F.2d at 538 (quoting Beavers, 577 F.2d at 387).
 
 
 24
 We review appellant's claim under Congress' temporary statutory standard, established by the Social Security Disability Benefits Reform Act of 1984. Pub. L. No. 98-460, 98 Stat. 1794.
 
 
 25
 ... An individual's statement as to pain or her symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or phychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or other laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.
 
 
 26
 42 U.S.C. Sec. 423 (d) (5) (A) . This standard is temporary because section 3 (a) (3) of the Act provided that the standard will apply only to "determinations made prior to January 1, 1987." 98 Stat. at 1799.
 
 
 27
 Initially, under this standard, there must be objective evidence of an underlying medical condition. If such evidence exists, there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged disabling pain. See Duncan v. Secretary of Health & Human Servs., 801 P.2d 847 (6th Cir. 1986).
 
 
 28
 The ALJ determined that Peachock had a severe impairment related to his back. This finding is supported by substantial objective medical evidence. Accordingly, Peachock has met the first prong of the statutory standard--there is objective medical evidence of an underlying medical condition.
 
 
 29
 The ALJ also found that Peachock's subjective complaints of pain were not consistent with his impairments and were not supported by objective medical evidence. Our review is limited to ensuring that substantial evidence supports the ALJ's finding.
 
 
 30
 There is also substantial evidence to support a finding that there is not objective medical evidence which confirms the severity of the alleged pain. While all of the doctors who examined Peachock noted his complaints of pain, none of them, with the exception of his treating physician who as a chiropractor is not an acceptable medical source, see 20 C.F.R. Sec.404.1513, diagnosed the pain as disabling.
 
 
 31
 There is substantial evidence to support a finding that Peachock's medical condition is not so severe that it could reasonably be expected to cause the alleged pain. Dr. Kohli, who performed Peachock's surgery, reported in Peachock's discharge summary that Peachock was "doing well, ambulating well. He had minimal spasm and no motor deficit." Dr. Stanich reported on an Ohio Rehabilitation Services Commission form Peachock's weakness, loss of motion and minimal lumbar spasm and concluded that these impairments limited him to lifting ten pounds and standing or walking two to four hours in an eight hour day. He also concluded that Peachock's ability to sit was not affected by the impairments. As was noted by the ALJ none of the medical reports show evidence of atrophy or a major weakness. Accordingly, the medical evidence does not indicate that Peachock's diagnosed impairment is so severe that it could reasonably be expected to cause disabling pain.
 
 
 32
 Since the medical evidence supports a finding that Peachock has failed to meet either test of the second prong of the standard, we conclude that there is substantial evidence to support the finding that Peachock does not suffer from disabling pain.
 
 
 33
 Peachock also argues that the magistrate erred in not considering new evidence submitted with his brief. This evidence was a psychiatric report which concluded that Peachock was suffering from a major depressive reaction. He contends that the case should be remanded to consider this evidence.
 
 
 34
 42 U.S.C. Sec.405(g) as amended, P.L. 96-265, Sec.307, 94 Stat. 458 (1980), provides that a reviewing court "may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. Sec.405 (g) (emphasis added). Therefore, this court may remand a case only when (1) the claimant shows that new material evidence is available and (2) good cause is shown for failure to incorporate such evidence into the prior proceeding. 42 U.S.C. Sec.405 (g) ; Willis v. Secretary of Health & Human Servs., 727 F.2d 551, 554 (6th Cir. 1984) (per curiam).
 
 
 35
 Under section 405 (g), a court should not order a remand for the taking of additional evidence unless there exists some logical reason why the proffered additional evidence was not, or could not have been, presented to the Secretary for inclusion in the record during the administrative proceedings. Birchfield v. Harris, 506 F. Supp. 251, 252-53 (E.D. Tenn. 1980).
 
 
 36
 Appellant offers no reason for his failure to incorporate the psychiatric evidence into the original proceedings. The record showed that appellant's impairments were causing anxiety in September of 1985, yet appellant was not tested until February of 1986, two weeks after his second administrative hearing. The record also indicates that the appellant received the report on February 18, 1986, but did not submit it to the Appeals Council, which did not render its decision until April 12, 1986. Regulations provide that the Appeals Council will consider the evidence introduced at the hearing as well as any new and material evidence submitted to it which relates to the issues before it. 20 C.F.R. Sec.404.976(b). Nothing in the record demonstrates any reason for the failure to present the psychiatric report to the Appeals Council. Because the appellant has given no reason for his failure to incorporate this evidence into the original proceeding, we cannot order a remand to the Secretary to consider new evidence. Since we have decided that appellant has failed to meet the "good cause" test of section 405(g) we do not decide whether the psychiatric report is material evidence.
 
 
 37
 Accordingly, having concluded that substantial evidence supports the final decision of the Secretary and that the appellant has failed to show good cause for not presenting the psychiatric report in the original hearings, we AFFIRM the judgment of the magistrate.
 
 
 
 [1]
 This testimony was elicited at Peachock's December 19, 1985 hearing