898 F.2d 153
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert Lee DUTY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 89-1744.
 United States Court of Appeals, Sixth Circuit.
 March 22, 1990.
 
 Before BOYCE F. MARTIN, Jr. and BOGGS, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Robert Lee Duty appeals the denial of his August 4, 1987 application for disability insurance benefits. His application was initially denied on October 29, 1987. On July 11, 1988, the Administrative Law Judge (ALJ) upheld the Secretary, and the Appeals Council denied a request for review. Duty filed suit in district court, which, on May 1, 1989, granted the Secretary's motion for summary judgment. On appeal, Duty claims that the district court erred by not finding that his disabilities meet or exceed the requirements in the listing of impairments that would qualify him for benefits. Finding that Duty is able to return to his former employment, we affirm.
 
 
 2
 * Duty claims that he became disabled on June 30, 1987, the day he retired from his job with the City of Ann Arbor, Michigan. He worked as a sewer maintenance person from 1965 to 1978 and as a security monitor from 1978 to June 30, 1987. After sustaining an injury on the job in 1970, Duty underwent back surgery. In 1978, he went to work in the security monitor job, which required less physical exertion. In this job, he walked or stood about four hours per day, but often he sat and watched television monitors. Whether he sat, stood, or walked around was Duty's choice; the job imposed no restrictions.
 
 
 3
 The medical evidence indicates a history of back problems. Duty has been diagnosed as suffering from osteoporosis and degenerative disc disease. Several treating physicians have recorded Duty's complaints of subjective back pain. He currently has difficulty walking or standing for any substantial period of time.
 
 
 4
 On June 24, 1988, a hearing was held before the ALJ. Duty testified that he stood more than he sat in his security monitor job, because his chair was uncomfortable. He was required to keep his desk area clean, but he was under doctor's orders not to sweep, mop, wash windows, bend or stoop. Duty testified that he was forced to take early retirement in 1987, before which his supervisors had tried to force him out "half a dozen" times.
 
 
 5
 Duty testified that he now can sit only 45 minutes to an hour or stand "an hour, hour and a half" at any stretch. He can do some work around the house, including sweeping and cleaning up the garage and the yard. He cannot do any mopping. He does some driving, but his wife does most of the driving.
 
 
 6
 The vocational expert testified that Duty's past employment for the sewer department had been very heavy (he was required to lift over 100 pounds regularly), semi-skilled work. His skills are not transferable. Duty is of advanced age and has not graduated from high school. The vocational expert testified that "I don't feel that he could be competitively employed."
 
 
 7
 The ALJ found that Duty "has degenerative disc disease of the lumbar spine," but he does not have an impairment or combination of impairments meeting the requirements of the listings. 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that Duty's work as a security monitor was past relevant work which he could still perform. The ALJ therefore determined that Duty was not disabled.
 
 
 8
 The district court agreed that the record contains substantial evidence that Duty could perform his past work as a security monitor. The job required him only to monitor television screens that viewed a car port area. He could sit, stand, or walk around in the small room that contained the monitors. The heaviest weight he lifted in this job was ten pounds.
 
 II
 
 9
 Duty argues that the documented medical evidence of his osteoporosis and other conditions amount to a disabling combination of impairments. He contends that his medical condition satisfies the requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1, Sec. 1.05(B) and (C).[1] Duty asserts that his documented case of osteoporosis constitutes a qualifying condition under Sec. 1.05(B) or Sec. 1.05(C).
 
 
 10
 We agree with the district court that the evidence is clear that Duty does not have so severe a condition as to be presumed disabled per se and that Duty retains the functional capacity to perform his past relevant work as a security monitor. The findings of the Secretary are conclusive if supported by substantial evidence. 42 U.S.C. Sec. 405(g); Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986) (en banc); Allen v. Califano, 613 F.2d 139, 145 n. 2 (6th Cir.1980). We hold that there is substantial evidence to support the finding of no disability.
 
 
 11
 Duty cannot meet either of the two criteria for osteoporosis under 20 C.F.R. Part 404, Subpart P, Appendix 1, Sec. 1.05(B). Duty has never had a fracture of a vertebrae. He also cannot show that he meets the requirements of Sec. 1.05(C). There is no proof of "significant motor loss," and subjective allegations of pain are insufficient to prove disability. See Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.1986).
 
 
 12
 Furthermore, Duty has the capacity to perform his past relevant work. Duty's job as a security monitor provided him the option to sit, stand, or walk. He did not have to lift weights in excess of ten pounds. The job required no strenuous exertion. There is no evidence to suggest that Duty, who could stand when he tired of sitting or sit when he tired of standing, could not perform this past relevant work.
 
 
 13
 Duty makes two other claims of error.[2] In light of our holding that substantial evidence supports the Secretary's decision, we find these arguments without merit.
 
 
 14
 The summary judgment for the Secretary is affirmed.
 
 
 
 [1]
 Sec. 1.05, Disorders of the spine, states in relevant part:
 B. Osteoporosis, generalized (established by X-ray) manifested by pain and limitation of back motion and paravertebral muscle spasm with X-ray evidence of either:
 
 
 [1]
 Compression fracture of a vertebral body with loss of at least 50 percent of the estimated height of the vertebral body prior to the compression fracture, with no intervening direct traumatic episode; or
 
 
 [2]
 Multiple fractures of vertebrae with no intervening direct traumatic episode; or
 C. Other vertebrogenic disorders (e.g., herniated nucleus puplosus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
 
 
 [1]
 Pain, muscle spasm, and significant limitation of motion in the spine; and
 
 
 [2]
 Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss
 
 
 [2]
 Duty alleges that the district court ignored the opinions of a treating physician and the vocational expert that he is unemployable. He also alleges that the ALJ erred by finding that some of Duty's testimony was not credible