843 F.2d 1393
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Douglas M. ZATELLI, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 87-1476.
 United States Court of Appeals, Sixth Circuit.
 April 7, 1988.
 
 Before NATHANIEL R. JONES and RALPH B. GUY, Jr., Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant Douglas Zatelli appeals from the judgment of the district court in favor of the Secretary of Health and Human Services (Secretary) affirming the Secretary's denial of his claim for a period of disability and disability benefits under sections 216(i) and 223 of the Social Security Act as amended, 42 U.S.C. 416(j), 423. For the following reasons we affirm the judgment of the district court.
 
 I.
 
 2
 Claimant filed his application for disability insurance benefits on June 14, 1985, alleging that he became disabled and unable to work on March 30, 1982 due to back and leg pain resulting from a herniated disc.[1] His application was denied initially and upon reconsideration by the Social Security Administration. Zatelli requested a hearing which was held on January 15, 1986 before an Administrative Law Judge (ALJ). On February 28, 1986, the ALJ issued his decision finding that Zatelli was not disabled under the Social Security Act, as amended. The Appeals Council concurred with the ALJ's decision and denied Zatelli's request for review on May 1, 1986, making the ALJ's decision the final decision of the Secretary.
 
 
 3
 The following evidence was introduced at the January 15th hearing.[2]
 
 
 4
 Claimant was born on March 24, 1942 and was forty-three years old when he applied for disability benefits. He completed seventh grade and received a Graduate Equivalency Diploma while he was in the Army. Claimant was employed as a maintenance foreman, shop superintendent, snow removal business operator, and gift shop operator. Zatelli alleged that he became unable to work on March 30, 1982 due to back and leg pain which resulted from a herniated disc. He testified at the hearing that he experiences constant pain in his lower back and occasional throbbing in his right calf. He also stated that he felt pain in his hip and attributed this to driving to the hearing and sitting for two hours. He explained that if he does not do anything, i.e., lays down and watches television, he does not have any pain. He stated that he has numbness in his right hand due to an injury he suffered 16 years ago and that this prevents him from doing fine manipulation with that hand. He also noted that he has a hearing problem which requires him to wear two hearing aids. Claimant explained that his daily activities include laying on the couch, watching television, doing some dishes and feeding his daughter three times per day. He testified that he last worked on a full-time basis for the Cadillac Plating Corporation as a plater and maintenance foreman from February, 1972 through March, 1982. He explained that from 1976 or 1977 through 1983 he owned and operated a snow plowing business on a part-time basis. He also explained that he was half owner of a gift shop which sold patio furniture and accessories and he worked there for three or four months in 1983. After selling the gift shop, he drove an ice cream truck for a short period of time until his leg began to bother him. He stated that after this time, he stayed home and watched his two year old daughter while his wife worked. He concluded that he could not perform even sedentary work because he must lay down most of the day.
 
 
 5
 On March 15, 1981, claimant was admitted to Mount Clemens hospital after complaining of back pain. Claimant explained that six weeks previously he lifted a heavy object at work and experienced pain in his back the next day. After attempting conservative therapy, Dr. Ferris, claimant's treating physician, performed a microdiscectomy at L5 in which a large herniated disc was removed.
 
 
 6
 After an initial period of improvement, claimant again complained of back pain. On August 31, 1982, he underwent a lumbar laminotomy and discectomy. Post-operatively, he had some respiratory difficulty and he was discharged on September 4, 1982, with instructions to take pain medication and to restrict his activities.
 
 
 7
 On July 1, 1985, Dr. Howes, conducted a consultative examination of claimant. During the examination, claimant stated that he was no longer under medical care, does not use a back brace, and, on an average of once per week, takes Momentum and for more severe pain, Tylenol with Codeine. Upon examination, claimant's deep tendon reflexes were normal; there was numbness in the palm of his right hand, right fifth toe and lateral aspect of the right forefoot; straight leg raising was normal; and range of motion of the lumbar spine showed slightly restricted forward flexion but normal on all other planes. Claimant reported that he was relatively asymptomatic at the time of the examination and attributed this to keeping a low level of activity. Dr. Howes concluded that claimant has low back syndrome with some lumbar plexis involvement.
 
 
 8
 On August 7, 1985, claimant saw Dr. Ferris. Dr. Ferris stated that there was little change in claimant's overall condition and that he experiences marked pain into the right lower extremity with activity. He opined that claimant had nerve root irritation probably with nerve root adhesions and he recommended that claimant limit his activity with no lifting, bending or long car rides.
 
 
 9
 Dr. Lewis testified at the administrative hearing as a medical advisor. Dr. Lewis concluded that claimant's main impairment is a herniated intervertebral disc with persistent nerve irritation which is attributed to scarring. Dr. Lewis stated that claimant also has a hearing loss which is not a significant problem in a one-on-one situation and has a form of carpal tunnel syndrome due to a severed nerve. He concluded that claimant's impairment would restrict him from repetitive bending and stooping but would not limit his lifting if he lifted with his hands, not using his back, and did not lift objects from the floor.
 
 
 10
 Linda Zatelli, claimant's wife, also testified at the hearing. She stated that claimant watches their young child and cleans the house a little but if he attempts to do too much, he experiences pain. She opined that her husband could not work.
 
 
 11
 On May 23, 1986, subsequent to the ALJ's and Appeals Council's decision, claimant underwent a "psychiatrist evaluation" which was conducted by Dr. Harry O. Ingberg.[3] After examining claimant, Dr. Ingberg reported flexion to be two and a quarter inches with a smooth return, backward bending to one-half of an inch, side bending to within 22 inches of the floor and trunk rotation to sixty degrees. He stated that claimant had no discomfort, no tenderness over the spine or buttocks, and strong back muscles. He also noted absent right ankle jerk but brisk reflexes elsewhere, deficient light touch in the right anterior thigh and right lateral lower leg, and no weakness in the lower limbs. Dr. Ingberg concluded that claimant suffered from post lumbar laminectomy; arachnoiditis with bilateral radiculopathy contributing to cramping of the right calf and fecal incontinence. He suggested that an EMG be performed to determine if there is objective evidence of nerve root irritation. He opined that claimant is totally and probably permanently disabled from all productive employment.
 
 
 12
 After reviewing the evidence, the ALJ determined that claimant had a severe impairment, but that he did not have an impairment or combination of impairments that meet or equal one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the Listings). He also found that claimant's allegations of severe pain and limitation of functional capacity were not corroborated by the objective evidence and were not credible. The ALJ further found that claimant was unable to perform his past relevant work, but retained the residual functional capacity to perform a full range of sedentary work and was thus not disabled as defined by the Social Security Act. The district court found these findings to be supported by substantial evidence.
 
 
 13
 Claimant filed this action pursuant to 42 U.S.C. Sec. 405(g), to obtain judicial review of the final decision of the Secretary. The matter was referred to a United States Magistrate for her findings and recommendation. After reviewing the record and considering claimant's Motion for Summary Judgment, the magistrate, issued her Report and Recommendation on January 27, 1987 recommending that the Secretary's decision be reversed and claimant's Motion for Summary Judgment be granted. After consideration of the Secretary's objections to the magistrate's report, the district court rejected the Magistrate's Report and Recommendation and granted defendant's Motion for Summary Judgment. Claimant filed a Motion for Reconsideration, which was denied by the district court on April 15, 1987. Appellant timely appealed from this judgment.
 
 
 14
 Claimant argues that the Secretary's finding that he has the residual functional capacity to perform sedentary work is not supported by substantial evidence. Specifically, he challenges the finding that his allegations of severe pain and marked limitation of functional capacity are not supported by objective evidence.
 
 II.
 
 15
 This court has jurisdiction on appeal to review the Secretary's decision pursuant to 42 U.S.C. Sec. 405(g) which specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence' means 'more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)), cert. denied, 461 U.S. 957 (1983). In determining whether the Secretary's findings are supported by substantial evidence, we must examine the evidence in the record "taken as a whole." Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980), and we " 'must take into account whatever in the record fairly detracts from its weight.' " Beavers v. Secretary of Health, Educ. & Welfare, 577 F.2d 838, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam).
 
 
 16
 We review appellant's allegations of disabling pain under the following standard. Initially, there must be objective evidence of an underlying medical condition. If such evidence exists, there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged disabling pain. Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 853 (6th Cir.1986).
 
 
 17
 The Secretary admits that the first prong of Duncan has been satisfied by the claimant, since a medical condition was established by objective medical evidence. However, the ALJ expressly found that "[t]he claimant's allegations of severe pain and marked limitation of functional capacity are not corroborated by the objective evidence of record and are not credible." The ALJ's finding is tantamount to a finding that the claimant has not satisfied the second prong of the statutory standard--i.e. there is no objective medical evidence to confirm the severity of the alleged pain and the objectively determined medical condition is not of the severity which can reasonably be expected to give rise to the alleged disabling pain. We take claimant's argument to be a challenge to this finding.
 
 
 18
 Claimant argues that this finding is not supported by substantial evidence. He argues that the following testimony given by the Secretary's medical expert constituted objective medical evidence of pain."
 
 
 19
 Q. O.K. Since September 1982 what do the records show?
 
 
 20
 A. Yes, there has been persistent symptomatology and this is confirmed by an electromilogram [sic] and also a scan of the spine subsequent to surgery and also by nerve optic examination.
 
 
 21
 Q. O.K. and what does this show?
 
 
 22
 A. That he has an absent ankle jerk on the right, he has lost sensation on the right. The electromilogram [sic] shows denervation of the S-1 segment on the right.
 
 
 23
 We note, however, Dr. Lewis also opined that the claimant's impairment did not prevent him lifting "a relatively light weight" or lifting while working at a bench or a table.
 
 
 24
 After examining the record, including the testimony of Dr. Lewis, we find that the ALJ's finding concerning claimant's subjective complaints of pain are supported by substantial evidence.
 
 
 25
 Dr. Ferris noted that "it appears that [the claimant] is well until he begins an activity. With activity he has marked pain into the right lower extremity...." He then made the following conclusions: "My impression is of nerve root irritation, probably with nerve root adhesions."
 
 
 26
 Dr. Howes made the following observations.
 
 
 27
 With regard to his back, motions of the lumbar spine showed forward flexion of the 0 to 70 degrees. The other motions were normal. There was some discomfort in the lumbar area of the spine and also in the left sacroiliac area. With regard to his leg, at the time of this examination he did not have any of the discomfort in his calves which he described in his present illness. He pointed out that at the time of this examination he had been keeping his activity at a low level, and as a result was relatively asymptomatic.
 
 
 28
 The results of this examination indicate that this patient has a low back syndrome. There is the history of a herniated disc and two laminectomies. The evidence indicates that there is some lumbar plexis involvement....
 
 
 29
 Finally, Dr. Ingberg made the following observations: Hip flexion at 95 degrees on the right and 115 degrees on the left caused low back pain; straight leg raising was positive for sciatic nerve irritation at 30 degrees on the left and 45 degrees on the right; there was tension in the back, but there was no tenderness over the spine or buttocks area including the sciatic notch. Dr. Ingberg noted that the claimant does not appear to have discomfort.
 
 
 30
 Dr. Ingberg commented that the claimant "at present is totally and probably permanently disabled from all productive employment." He suggested, however, that an EMG be performed "to determine if there is objective evidence of nerve root irritation...."
 
 
 31
 At the outset, we note that none of these doctors diagnosed the claimant's pain as disabling. Furthermore, although Dr. Ferris noted probable nerve root adhesions resulting in nerve root irritation, Dr. Ingberg specifically suggested an EMG to determine if there is objective evidence of nerve root irritation. There is no record of an EMG subsequently being performed. Finally, we do not believe that Dr. Lewis' general statement concerning the claimant's sympomatology is an admission that objective medical evidence confirms the claimant's subjective complaints of pain, especially when this statement is read in conjunction with Dr. Lewis' conclusion about the claimant's capacity to lift light weights from a bench or a table.
 
 
 32
 Accordingly, finding that the ALJ's findings are supported by substantial evidence, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 Claimant also applied for disability benefits on July 20, 1982 and May 11, 1983 alleging that he became disabled on March 30, 1982. The July, 1982 application was denied initially on September 8, 1982, and the May, 1983 application was denied initially on July 7, 1983 and on reconsideration on September 21, 1983. Claimant failed to pursue further administrative review of either application and the applications were not reopened
 
 
 [2]
 As an initial matter, this court notes that the ALJ in making his disability determination only considered evidence pertinent to the time period subsequent to the denial of claimant's second claim on September 21, 1983. The ALJ, after determining that good cause had not been established which would warrant reopening or revising the earlier determination, found that the earlier determinations of non-disability were res judicata to this claim. The claimant does not contest this finding. See Willis v. Secretary, Health and Human Servs., 802 F.2d 870, 871 n. 2 (6th Cir.1986)
 
 
 [3]
 Claimant submitted Dr. Ingberg's report and asked the Secretary to reconsider its decision denying benefits. After reviewing the report, the Appeals Council determined that the report's conclusion of total disability is not supported by objective evidence. The Secretary let stand his decision denying benefits