843 F.2d 1390
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 No. 87-1370.
 
 Margaret BEWERSDORF, Plaintiff-Appellant,
v.
Otis R. BOWEN, M.D., Secretary of Health and Human Services,
Defendant-Appellee.
 United States Court of Appeals, Sixth Circuit.
 April 11, 1988.
 Before MILBURN, Circuit Judge, WEICK and CONTIE, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Margaret Bewersdorf appeals from the district court's judgment affirming the Secretary's determination that Bewersdorf is not disabled and therefore not entitled to a period of disability and therefore not entitled to a period of disability and social security disability insurance benefits. For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 On April 3, 1984, Bewersdorf applied for a period of disability and disability insurance benefits claiming an inability to work from July 31, 1982, due to a heart condition, deterioration of the root of her spine, back pain, bronchitis, hypertension, cataracts, dizziness, cysts in both breasts, arthritis, edema, leg pain, asthma, a lens implant, and hyperventilation. Her application was denied, and Bewersdorf did not appeal. On March 29, 1985, Bewersdorf filed a second application for disability insurance benefits alleging an inability to work from July 31, 1982, due to heart disease, angina, chronic obstructive pulmonary disease, deteriorated spine, and arthritis. Her second application was denied initially and upon reconsideration. Bewersdorf requested an adminsitrative hearing which was held on December 2, 1985. Bewersdorf was fifty-five years old at the time of the hearing.
 
 
 3
 At the hearing, the following evidence was introduced. Bewersdorf testified that she is five feet tall, weighs 165 pounds, and has a high school education.[1] She had worked as an office clerk at Hall's Motor Transit from October, 1961, to July 31, 1982, and from February 14, 1983, through March 4, 1983.[2] At Hall's Motor Transit, Bewersdorf worked as a cashier, dispatcher, and freight inspector. She also typed, "hunt and peck" style, and operated a calculator and computer. She stated that during the workday she had to frequently lift up to ten pounds. She stopped working in July of 1982, because her blood pressure became too high and because climbing stairs aggravated her knee, hip, and right leg and caused pinched nerves and muscle spasms in her back. Additionally, at the hearing, Bewersdorf stated that she would get dizzy spells about four or five times per day when she exerted herself and most recently had such a spell one week prior to the hearing. She had a cataract removed from her left eye in November of 1982, and can now read and watch television with glasses. Because of muscle spasms in her lower back and the resulting pain in her right leg she must use a cane approximately two days each week for walking. She explained that she brought no cane to the hearing because her husband was there to assist her in her walking. She can sit for approximately thirty-five to forty minutes and stand for about the same length of time. She testified at the hearing that she can walk about a quarter of a mile but has difficulty walking up and down stairs. Forward bending from her waist, she can pick items up from the floor. Doing so, however, produces pain in her back. If she lifts more than two pounds at a time, she gets muscle spasms in her upper back, shortness of breath, and dizziness. She added that she can dust and cook meals on top of the stove, but cannot open and close the oven door. She can attend to her personal needs although she needs help in and out of the bathtub.
 
 
 4
 For the muscle spasms in her back, she takes Flexoril and Naprosyn and receives athrolate injections approximately every two months and nerve blocks approximately every three or four months when the pain prevents her from walking. She additionally takes Nalfon 600 mg. three times each day for her back and Naprosyn for her knee.
 
 
 5
 In addition to the pain which occurs when sitting for longer than thirty minutes, Bewersdorf testified that she gets short of breath, shaky, and dizzy. She added that she gets pains in the back of her head, and her face breaks out in a rash; she gets shingles, and must lie down. If she were to perform a sit-down, clerical job, she added that she would have to lay down every half hour or twenty minutes. Without Lasix, she testified, her fingers freeze up and she can't hold onto anything. Nitrostat relieves the pain in her chest and left arm. She feels she cannot function without her prescribed medications, and because of her impairments, she stated, Dr. Peter Nowosielski, would not permit her to return to work.
 
 
 6
 In her disability report, dated April 3, 1984, Bewersdorf stated that her treating physician, Dr. Nowosielski, advised her not to lift heavy objects, move too fast, bend too much, or stretch too high. He told her to avoid too much excitement, avoid using heavy machines such as vacuum cleaners, and avoid scrubbing floors due to her shoulders and knees. She stated that she could cook, dust, do light polishing, wash dishes, and do the laundry. She reads, bicycles one mile each day, and tries to slowly walk three miles each day. She can no longer drive due to a pinched nerve in her leg. In her June 20, 1984 reconsideration disability report, Bewersdorf answered that Dr. Nowosielski told her to avoid heavy lifting and advised her to pace herself and not over exert herself. Her husband dusts, makes the beds, grocery shops, and does the laundry although she still cooks on top of the stove. For recreation, she reads, needlepoints, walks two miles each day, visits neighbors, and travels by bus to see her mother once each week. She added that during each work day, she would walk for three hours, stand for two, and sit for three with frequent bending, reaching, and lifting of up to ten pounds. The heaviest weight she lifted was twenty pounds.
 
 
 7
 The following medical evidence was introduced at the hearing.
 
 
 8
 On April 28, 1981, Bewersdorf was admitted to Martin Place Hospital complaining of abdominal pain. The discharge summary indicates that Bewersdorf was examined by Dr. G. Burnstein of the cardiology department after Bewersdorf complained of chest pain. Dr. Burnstein reported that Bewersdorf complained of chest pain occurring with, or after, exertion or during the night. Sublingual Sorbitrate relieves her pain in fifteen to twenty minutes. The pain lasts fifteen to thirty minutes without medication. Dr. Burnstein administered a treadmill test which demonstrated an abnormal blood pressure response with anginal symptoms. There was no significant ST segment depression or arrhythmia. A chest x-ray revealed chronic granulomas, in the right lower lobe. Examination of the right foot and right ankle were within normal limits. A Thallium scan revealed a normal distribution of the radionuclide throughout the myocardium. Bewersdorf was treated with Bentyl, diet, nitroglycerine, and Librax. She made satisfactory progress and was discharged.
 
 
 9
 On November 1, 1982, Bewersdorf was admitted to Detroit Osteopathic Hospital for cataract surgery. Dr. J. Cardellio examined Bewersdorf and noted the following impressions: left cataract with developing right cataract; severe degenerative joint disease by history; irritable bowel syndrome by history; dizziness (rule out orthostatic hypotension); and histoplasmosis, inactive state by history. He recorded her blood pressure as 142/92 in supine position and 134/92 in standing position. He noted that she appeared to be in no acute distress. He removed the cataract from her left eye. Bewersdorf tolerated the surgery well, and her postoperative stay was uncomplicated.
 
 
 10
 A mammogram was performed on August 1, 1983. The test revealed asymmetrical mammary dysplasia with suggestion of a mass lesion in the upper and outer quadrants of the right breast. A follow-up mammogram, on April 5, 1984, indicated asymmetric densities in both breasts, unchanged from previous study. An April 16, 1985 mammogram revealed a large mass, strongly suggestive of carcinoma, containing extensive tumor calcifications in the upper, outer quadrant of the right breast. The test also revealed a small area, considered highly suspicious for a comedocarcinoma, containing punctate calcifications in the upper medial quadrant of the left breast. A biopsy of Bewersdorf's right breast was performed on April 29, 1985. The biopsy indicated that the tumor was benign and that Bewersdorf had fibrocystic disease with sclerosing adenosis, intraductal papillomatosis, focal intraductal hyperplasia, focal microcalcifications, and several small foci of foreign body reaction. In a report dated July 9, 1985, Dr. Rizzo diagnosed Bewersdorf as having fibrocystic disease of the right breast. He added that she had no malignancy and that no further treatment was warranted.
 
 
 11
 A report submitted by Dr. Peter F. Nowosielski, Bewersdorf's treating physician, on April 25, 1985, indicates that he had treated Bewersdorf since April 5, 1982. She related to him a history of back pain stemming, in part, from an automobile accident in which she was involved in October of 1981. Nerve blocks in the lumbosacral spine relieve the pain. X-rays, taken in September of 1982, showed a lumbar spine with narrowing of the disc space in the L5-S1 area. A September 16, 1982 EMG evidenced right-left second, lumbar third, lumbar fourth, motor root compression of recent onset. X-rays of the hips, and knees, in September of 1982, showed minimal degenerative changes. Shoulder x-rays, taken in March of 1982, showed mild degenerative changes. Nowosielski indicated that Bewersdorf has been hypertensive and takes one tablet of Maxzide daily. A Holter monitor, taken on February 8, 1983, indicated an atrial ectopy, characterized by rare isolated, mostly unifocal premature atrial contractions. There was no supraventricular tachyarrhythmia. A sector scan from March 11, 1983, showed minimal mitral valve prolapse. A repeat sector scan on April 15, 1985, showed the prolapse of the mitral valve as normal left ventricular size and contractility, normal right-sided heart structures cardial effusion. The systolic time interval was compatible with normal left ventricular function. She has demonstrated anterior chest pain syndrome which has required therapy in the past. She is presently on Inderal, and Nitrostat is used when needed. She has demonstrated fibrocystic disease in her right breast, which on biopsy was benign. X-rays revealed mild degenerative changes in the cervical spine. She has lower cervical strain syndrome. She has marked restrictive ventilatory deficit. Nowosielski additionally recorded Bewersdorf's complaints of pain in her left leg which, at times, awaken her at night. The pain begins whether she is walking or at rest. She complains of coughing and wheezing but a direct laryngoscopy detected that the vocal cords were equal and intact. Finally, Nowosielski reported, "Her prognosis is not good at this time, and over and above her back problems, neck problems, we do have an individual who should be considered permanently and totally disabled because of a probable malignancy."
 
 
 12
 In a follow-up report, dated July 12, 1985, Dr. Nowosielski reported that Bewersdorf had seen him on several occasions. On May 9, 1985, Bewersdorf had a herpes zoster lesion on her face and chin which concerned Nowosielski because of her recent surgery and because of the possibility of premalignant lesions. He reported that Bewersdorf's surgeon was going to speak to her about a cutaneous mastectomy because of the severe potential of her having a malignancy in the lung. On her last appointment, Nowosielski reported that she complained of a pain in the head and lump on the back of the right side of the neck which was a palpable lymph node. He added that she was taking Naprosyn again for her pain.
 
 
 13
 On May 11, 1984, Bewersdorf was examined by Dr. John S. Cowan, a consulting physician. In his report, he reviewed Bewersdorf's medical history and reported that she did not appear to be in any significant discomfort. She walked normally, climbed on and off the examining table, and assumed different postures with no significant discomfort. Her blood pressure was 142/88. Her neck enjoyed full range of motion. Her lungs were clear and had fairly good excursion with no rales or wheezes. He heard no heart murmurs, and her heart sounds were normal except A2 was equal to P2. Although she complained of tenderness in both knees and the right shoulder, all her joints enjoyed full range of motion, and her hand strength appeared normal. On straight leg raising, she did not complain of pain in the legs and she was able to stand and forward bend to bring her fingertips to within one inch of the floor. She recovered quickly from this position with no complaint of discomfort.
 
 
 14
 Dr. Cowan further reported that he found no positive evidence of costochronditis but noted that she may have some arterio-sclerotic heart disease with angina. He recommended more sophisticated studies on this point. Her mild hypertension is well controlled by medication, and she is presently normotensive. He found no physical evidence of mitral valve prolapse. She does have some mild osteoarthritis of the knees and shoulders. It is possible she has sciatica emanating from the low back. A biopsy on her right breast was benign, and he attributed the tenderness in her left shin to an old trauma rather than phlebitis.
 
 
 15
 Dr. L. Jones, a consulting physician, examined Bewersdorf on May 9, 1985. Dr. Jones recorded her blood pressure as 124/80. Her breathing produced no rales, rhonchi or wheezing. Her heart rate had normal sinus rhythm with no murmurs. He noted a limited range of motion in some joints. Flexion of the knees is limited to 100? bilaterally. Left shoulder can be flexed forward to 120?. Internal rotation is eighty percent of expected normal. With respect to her hips, forward flexion is seventy degrees on the right and eighty on the left. He found weakness in both hands. He found tenderness over the lumbar spine and right lumbosacral paraspinal muscles. Forward bending to ninety degrees was possible with some discomfort. She walks with no difficulty. In sum, Dr. Jones found, in Bewersdorf: hypertension; history of myocardial infarction with recurrent angina pectoris; peripheral arthralgia and back pain; recent right breast surgery; retinal scarring; past history of thrombophlebitis; and obesity.
 
 
 16
 Finally, Dr. Ronald Sables, an orthopaedic surgeon, examined Bewersdorf on September 13, 1985, on Nowosielski's request. Bewersdorf complained of pain in her knees, and Sables determined that she had minimal degenerative changes in her hips and knees, slightly greater on the right as compared to the left. Her shoulders showed mild degenerative changes. Dr. Sables noted no muscular atrophy. He diagnosed Bewersdorf as having degenerative osteoarthritis in both knees, with chondromalacia, and concluded, "Due to this condition I feel she is disabled from prolonged standing, walking, kneeling, or bending on a permanent basis."
 
 
 17
 On the basis of this evidence, the ALJ determined, on February 25, 1986, that Bewersdorf was not disabled, and, therefore, not entitled to benefits. He added that many of Bewersdorf's complaints of pain were not supported by objective findings in the medical evidence, and that, Bewersdorf's impairments would not prevent her from doing her past relevant work as an office clerk.
 
 
 18
 Bewersdorf appealed the ALJ's decision to the Appeals Council. The Appeals Council, on May 16, 1986, declined to review the ALJ's decision. Bewersdorf then timely filed the instant action with the district court pursuant to 42 U.S.C. Sec. 405(g). The matter was referred to a United States Magistrate who recommended, on October 31, 1986, that the Secretary's decision be upheld. The district court, on March 11, 1987, adopted the Magistrate's Report and Recommendation, and thereby affirmed the Secretary's denial of benefits. This timely appeal followed.
 
 
 19
 The only issue on appeal is whether the Secretary's finding that Bewersdorf had the residual functional capacity to perform her past relevant work is supported by substantial evidence.
 
 II.
 
 20
 This court has jurisdiction on appeal to review the Secretary's decision pursuant to 42 U.S.C. Sec. 405(g) which also specifies that the Secretary's factual findings in a social security case are conclusive if supported by substantial evidence. "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)), cert. denied, 461 U.S. 957 (1983). In determining this question, we examine the record "taken as a whole," Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980), and " 'must take into account whatever in the record fairly detracts from its weight.' " Beavers v. Secretary of Health, Educ. & Welfare, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). Even if the reviewing court were to resolve the factual issues differently, the Secretary's determination must stand if it is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam). This deferential standard of review applies only to resolving issues of credibility. Wiggins v. Schweiker, 679 F.2d 1387, 1389, fn. 3 (11th Cir.1982).
 
 
 21
 The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. Sec. 423(d)(1)(A).[3] If the claimant is working, benefits are automatically denied. If a claimant is not found to have an impairment which significantly limits his ability to work (a severe impairment), then he is not disabled. Since the ALJ found that Bewersdorf had not been employed since July 31, 1982, and that Bewersdorf had suffered from degenerative arthritic changes in the lumbar spine and knees, a history of hypertension controlled with medication, and post status cataract surgery, further inquiry was necessary. If the individual is not working and has a severe impairment it must be determined whether he suffers from one of the "listed" impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1; see 20 C.F.R. Sec. 404.1525(a). If so, benefits are owing without further inquiry. In the present case, the ALJ found that Bewersdorf did not suffer from one of the listed impairments.[4] In such a case, assuming the claimant has previously worked, the Secretary must next decide whether the claimant can return to the jobs he previously held. By showing "a medical basis for an impairment that prevents him from engaging in his particular occupation," Hephner v. Mathews, 574 F.2d 359, 361 (6th Cir.1978), the individual establishes a prima facie case of disability. In the present case, the Secretary found that the claimant was capable of returning to her past relevant work as an office clerk. The Secretary consequently concluded that Bewersdorf was not disabled and, therefore, not entitled to benefits.
 
 
 22
 On appeal, Bewersdorf contends that the Secretary's determination that she has the residual functional capacity to return to her past relevant work as an office clerk is not supported by substantial evidence. Specifically, she argues that the Secretary erred in determining that she can perform a full range of light work despite her complaints of pain and despite the opinion of her physician that her disabilities prevent her from standing, walking, sitting, or bending for prolonged periods of time.
 
 
 23
 In evaluating a claimant's ability to perform her past relevant work, the ALJ is obliged by the regulations to review the claimant's residual functional capacity and the physical and mental demands of work the claimant has done in the past. 20 C.F.R. Sec. 404.1520(e). In considering a claimant's residual functional capacity to perform work, the ALJ must assess the claimant's ability to do physical activities such as walking, standing, lifting, carrying, pushing, pulling, reaching, and handling. 20 C.F.R. Sec. 404.1545(b). "Ultimately, the ALJ must measure the requirements of the past work against the present capabilities of the claimant." Brown v. Bowen, 794 F.2d 703, 707 (D.C.Cir.1986).
 
 
 24
 With respect to Bewersdorf's present capabilities, the ALJ determined that, considering her severe and nonsevere impairments both alone and in combination, Bewersdorf retains the residual functional capacity to perform work-related functions except for work involving medium to heavy lifting. The ALJ added, "There certainly is no reason why the claimant would be unable to stand and walk throughout the day." Thus, the ALJ found that Bewersdorf retained the residual functional capacity to perform a full range of light work. The record contains substantial evidence to support this determination.
 
 
 25
 First we note that light work, as defined by 20 C.F.R. Sec. 404.1567(b), involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. A job is also considered light work when it involves a good deal of walking or standing or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. Id. Social Security Ruling 83-10 elaborates that the full range of light work requires standing or walking, off and on, for approximately six hours of an eight-hour workday. Sitting may occur intermittently during the remaining time.
 
 
 26
 The record discloses that the ALJ found, as Bewersdorf's severe impairments, degenerative arthritic changes in the lumbar spine and knees, post status cataract surgery, and a history of hypertension controlled by medication. With respect to the degenerative arthritis, as discussed in the statement of facts, Dr. Nowosielski interpreted x-rays taken of Bewersdorf's knees, hips, shoulders, and back as demonstrating only minimal degenerative changes. Upon reviewing Bewersdorf's extensive medical history, Nowosielski concluded that she should be considered permanently and totally disabled due to a possible malignancy. Such was later determined, following a biopsy, to be benign. Even in his follow-up report, Nowosielski focussed primarily on the possibility of premalignant lesions.
 
 
 27
 Further, Dr. Sables, who saw Bewersdorf on only one occasion, provided Bewersdorf's most recent medical assessment. He reported Bewersdorf as experiencing minimal degenerative changes in both knees with chondromalacia. He found no muscle atrophy. He however considered her disabled from prolonged walking and standing on a permanent basis.[5] For treatment, Dr. Sables recommended only heat applications, massage, exercise, and weight loss. He found no need for surgery or even a return office visit.
 
 
 28
 Dr. Jones, on May 9, 1985, noted some limited range of motion in Bewersdorf's knees, hips and shoulders as well as some tenderness over the lumbar spine. He found however that she walked with no difficulty and could forward bend to ninety degrees with little discomfort. Finally, Dr. Cowan reported that, while Bewersdorf has mild osteoarthritis, her joints enjoyed full range of motion. Bewersdorf, moreover, informed Dr. Cowan that "the joints do not hurt worse when she is moving, and, in fact, the knees feel better when she is walking than when she is sitting, if they happen to be bothering her on those days." She added that she has full range of motion in all these joints.
 
 
 29
 With respect to Bewersdorf's second severe impairment, cataract surgery, Dr. Cardellio reported that he removed a cataract from Bewersdorf's left eye, that she tolerated the procedure well, and that she recovered without complications. Indeed, Bewersdorf, in her disability reports admitted that she wears glasses only for reading and watching television and that she reads and needlepoints for recreation.
 
 
 30
 With respect to her last severe impairment, high blood pressure, the record reveals only one occasion where her blood pressure could be considered high.[6] This occurred prior to her cataract surgery. At all other times, the medical evidence indicates that her blood pressure is either normal or adequately controlled by medication. Thus, the medical evidence substantiates the Secretary's determination that Bewersdorf has the residual functional capacity to perform work-related functions except for medium or heavy lifting.
 
 
 31
 The evidence further supports the Secretary's determination to discredit Bewersdorf's complaints of pain, shortness of breath, and dizziness, in reaching the conclusion that Bewersdorf is able to return to her past relevant work. With respect to Bewersdorf's complaints of pain, this court has previously held that subjective complaints of pain may support a claim for disability. Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 852 (6th Cir.1986). To support such claim, however, there must be objective medical evidence of an underlying medical condition in the record. Id. at 853. If so, the court must then determine either that the objective medical evidence confirms the severity of the alleged disabling pain arising from the condition or that the objectively established medical condition is of such a severity that it can reasonably be expected to produce disabling pain. Id.
 
 
 32
 In the present case, as indicated by the ALJ, the record contains no objective medical evidence to support many of Bewersdorf's complaints. Specifically, the record contains no medical evidence to support Bewersdorf's allegations of shortness of breath or exertion, dizziness, episodes of black outs, chest pain on exertion, or the radiation of pain down her right lower extremity. Bewersdorf consequently failed to satisfy the first prong of the Duncan standard with respect to these allegations of pain. To the extent however that Bewersdorf did satisfy the first prong of the Duncan standard, we find that she failed to satisfy either of the alternative tests of the second prong of the Duncan standard.
 
 
 33
 First, there is substantial evidence to support a finding that there is no objective medical evidence which confirms the severity of the alleged pain. The evidence instead demonstrates that Bewersdorf's high blood pressure was under control, that she had recovered well from cataract surgery, and that despite mild degenerative arthritic changes in the lumbar spine and knees, she ambulated well and enjoyed either full or only slightly impaired range of motion in her joints. Neurological examinations have been consistently normal, and the most recent electromyogram was interpreted as normal. Further, Bewersdorf answered in her April 3, 1984 disability report that Dr. Nowosielski advised her against heavy lifting and too much excitement. She stated that she could do household chores, including the laundry, and could bicycle one mile each day and walk three miles. In her reconsideration disability report, dated June 20, 1984, Bewersdorf walked two miles each day and did no household work except the cooking. At her hearing, Bewersdorf stated she could walk only one-quarter of a mile and walked with a cane twice a week although she did not have a cane at the hearing. Bewersdorf further testified that she could lift only one to two pounds without severe pain in her back. The evidence indicates that Nowosielski advised her only against heavy lifting. None of the physicians advised her against lifting light objects. Indeed, Sables did not address lifting, but only advised against prolonged walking, standing, sitting, kneeling, reaching, and bending. The objective medical evidence simply fails to confirm the severity of Bewersdorf's alleged disabling pain.
 
 
 34
 Second, substantial evidence supports the Secretary's findings that Bewersdorf's objectively determined medical conditions are not so severe they could reasonably be expected to produce disabling pain. As discussed previously, the record discloses only mild degenerative changes and normal or controlled blood pressure. Accordingly, the medical evidence does not indicate that Bewersdorf's diagnosed infirmities are so severe that they could reasonably be expected to produce disabling pain.
 
 
 35
 With respect to Bewersdorf's past relevant work as an office clerk, the record indicates that Bewersdorf walked for three hours, stood for either two or three, and sat for either two or three. She lifted twenty pounds at the most and frequently lifted up to ten pounds. As these figures fall well within the requirements of light work, substantial evidence supports the Secretary's determination that Bewersdorf is capable of performing her past relevant work as a clerk/cashier, and is, therefore, not disabled and not entitled to social security disability benefits.
 
 
 36
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Bewersdorf actually testified that she completed grade thirteen. The ALJ and magistrate found that she had completed her high school education
 
 
 [2]
 The record indicates that, in 1983, Bewersdorf resumed work on February 14, 1983, was laid off on March 4, 1983, and was asked to retire on April 28, 1984 because she "did not qualify to resume her job." At the hearing, Bewersdorf testified that she was laid-off because the company thought she could not handle her job because of nervousness and because of inadequate typing skills
 
 
 [3]
 Section 423(d)(1)(A) provides:
 Inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
 
 
 [4]
 In her appellant's brief, Bewersdorf concedes that her impairments do not meet or equal the impairments listed in 20 C.F.R. Sec. 404, Subpt. P, Appendix 1
 
 
 [5]
 As part of her argument, Bewersdorf contends that the Secretary failed to accord due deference to the opinion of Dr. Sables, her treating physician. "The medical opinions and diagnosis of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985). The opinion of a treating physician is entitled to weight substantially greater than that of a doctor who has seen the claimant only once. Hephner, 574 F.2d at 362. However, the determination of disability must be made on the basis of the entire record and not on just some of the evidence to the exclusion of all other relevant evidence. Id
 In the present case, as indicated earlier, Dr. Sables examined Bewersdorf on only one occasion. His opinion, moreover, that Bewersdorf is unable to walk or stand for long periods of time is contradicted by Bewersdorf's own testimony as well as by medical evidence. In her disability report Bewersdorf claimed an ability to bicycle one mile each day and walk, very slowly, three miles each day. In her reconsideration disability report, she claimed to walk two miles each day. Further, Dr. Sables found no muscular atrophy in Bewersdorf; Dr. Jones found that Bewersdorf walked with no difficulty; and Dr. Cowan reported Bewersdorf as claiming that her knees feel better when she walks rather than when she sits. Thus, the ALJ did not err in not accepting Dr. Sables' opinion because there existed in the medical evidence and Bewersdorf's statements, substantial evidence to the contrary.
 
 
 [6]
 Blood pressure, in adults, is generally considered high and should be treated when it is greater than 140/90. David A. Morton, M.D., Medical Proof of Social Security Disability, at 100 (1983 Ed.)