887 F.2d 265
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William P. RILEY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 89-1213.
 United States Court of Appeals, Sixth Circuit.
 Oct. 16, 1989.
 
 Before BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant William P. Riley appeals from the judgment of the district court in favor of the Secretary of Health and Human Services (Secretary) affirming the Secretary's denial of his claim for a period of disability and disability benefits under sections 216(i) and 223 of the Social Security Act as amended, 42 U.S.C. Secs. 416(j), 423. For the following reasons we affirm the judgment of the district court.
 
 I.
 
 2
 Claimant filed his first application for disability insurance benefits on August 18, 1981, alleging that he became disabled and unable to work on August 20, 1980 due to recurrent chest pains, nervousness and depression. The Secretary denied claimant's application on November 9, 1981. Claimant did not appeal this denial.[1]
 
 
 3
 Claimant filed his second application for disability insurance benefits on August 18, 1982, again alleging a disability onset date of August 20, 1980. The Secretary denied claimant's application initially, but upon reconsideration awarded claimant disability benefits with an onset of disability date of October 29, 1982. Claimant, dissatisfied with the Secretary's determination as to the onset date of the disability, requested a hearing before an Administrative Law Judge (ALJ). This hearing was held on July 10, 1984.
 
 
 4
 On August 23, 1984, the ALJ issued his decision affirming Riley's entitlement to disability insurance benefits as of October 29, 1982, but denying benefits prior to that date. The Appeals Council concurred with the ALJ's decision and denied Riley's request for review on March 14, 1985, making the ALJ's decision the final decision of the Secretary. Claimant appealed to the district court. On April 16, 1986, the district court granted the Secretary's motion for summary judgment.
 
 
 5
 Claimant appealed the district court decision to this court. On August 4, 1986, the Secretary filed a motion for remand pursuant to the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98-460, Sec. 5, 98 Stat. 1794, 1801 (1984) (1984 Disability Amendments), in order to readjudicate Riley's case in light of the newly promulgated mental impairment regulations, 20 C.F.R. Sec. 404.1520a (1988). On December 19, 1986, the Court of Appeals granted the Secretary's motion for remand, and on January 27, 1987, the district court remanded the case back to the Secretary for further consideration.
 
 
 6
 On February 27, 1987, the Appeals Council vacated the prior decision and remanded the case to an ALJ to conduct a new hearing. The new hearing was held on July 8, 1987. The ALJ, once again, determined that prior to October 29, 1982, claimant retained the residual functional capacity to perform a significant number of sedentary jobs in the regional economy and was, therefore, not disabled. On December 23, 1987, the Appeals Council adopted the findings and conclusions of the ALJ's recommended decision. The case was then reinstated for judicial review.
 
 
 7
 Both parties filed motions for summary judgment. On July 15, 1988, the United States Magistrate issued a Report and Recommendation proposing that the Secretary's decision denying Riley's claim for disability benefits prior to October 29, 1982, be upheld. Claimant objected to the Magistrate's recommendation. On December 13, 1988, the district court issued a Memorandum Opinion and Order accepting the Magistrate's Report and Recommendation. Claimant thereafter filed this timely appeal.
 
 
 8
 The following evidence was introduced at the July 8, 1987 hearing.
 
 
 9
 Claimant was born on September 5, 1923, and was 58 years old when he reapplied for disability benefits on August 18, 1982. He completed twelfth grade and could read and write. Claimant worked for nearly thirty years as a sales representative for two sporting goods distributors until August, 1980. Claimant's job entailed much driving because his territory included three states. Riley last worked in August, 1980, alleging disability due to a heart condition, back problem, and depression. Metastatic kidney cancer was also discovered in April, 1984.
 
 
 10
 Claimant suffered a myocardial infarction in 1973. He complained of occasional chest pains since 1975, and underwent a catheterization and triple coronary bypass surgery in March, 1984. Mr. Riley died during the interim between the order of remand from this court and the July, 1987 hearing before the ALJ.
 
 
 11
 Claimant alleges that he became disabled on August 20, 1980. At the original hearing before the ALJ, claimant complained of severe depression starting in May, 1980, an ongoing heart problem, a prostate gland problem, and back pain. He testified that he experienced chest pains seven to nine times per week, causing him to take medication (nitroglycerine) and rest. Claimant alleges that his depression, heart condition, accompanying fatigue, leg cramps, prostate condition and back pain forced him to stop working.
 
 
 12
 Claimant testified that during the time period in question, August 20, 1980 to October 29, 1982, he took care of his own personal needs, performed light housework, and helped maintain a household that included two teenage children. Claimant indicated that he maintained a fishing boat and operated it approximately twice per month until late 1982 or early 1983. Furthermore, claimant continued to play the organ and drive his automobile during the time period in question. Riley added that he continued to attend church on occasion, entertained family and friends periodically, and helped with light housework including dusting, dishwashing and cooking.
 
 
 13
 Doctor Segundo Danao treated claimant through May, 1981, for his heart condition and indicated no symptoms or complaints indicating neurological or behavioral abnormalities, though the doctor later indicated that Riley complained of depression, irritability and insomnia during a consultation on December 11, 1982. Doctor Sushil Kumar conducted an evaluative examination of claimant on October 29, 1981, and reported that claimant was alert, coherent, and showed no signs of neurological abnormalities. Dr. Chris Gerling treated claimant from February to April, 1982, and reported that claimant had not exhibited any signs of behavioral abnormalities.
 
 
 14
 Dr. Choochart Kasemsarn examined claimant on March 9, 1983. Though the claimant complained of daily headaches, dizziness, depression, and suicidal impulses, Dr. Kasemsarn indicated that claimant had not attempted suicide and did not wish to see a psychiatrist. Dr. Kasemsarn reported that claimant exhibited normal neurological responses and normal intelligence. The doctor diagnosed a depressive disorder.
 
 
 15
 Dannelly Smith, a vocational expert, testified at the hearing before the ALJ that claimant's previous employment as a sporting goods salesman would be considered a semi-skilled light exertional level job. Smith testified that claimant probably could not return to work as a sporting goods salesman, but could transfer the skills he had acquired to a sedentary exertional level position. Smith testified that 7,000 such positions existed in the regional economy, 3,500 of which could readily be learned in 30 days or less.
 
 
 16
 Claimant argues that the Secretary's finding that he had the residual functional capacity to perform sedentary work from August 20, 1980 to October 29, 1982 is not supported by substantial evidence. Specifically, he challenges the finding that his allegations of mental impairment and marked limitation of functional capacity were not supported by objective evidence.
 
 II.
 
 17
 This court has jurisdiction on appeal to review the Secretary's decision pursuant to 42 U.S.C. Sec. 405(g) which specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence' means 'more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)), cert. denied, 461 U.S. 957 (1983). In determining whether the Secretary's findings are supported by substantial evidence, we must examine the evidence in the record "taken as a whole." Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980), and we " 'must take into account whatever in the record fairly detracts from its weight.' " Beavers v. Secretary of Health, Educ. & Welfare, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam).
 
 
 18
 The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. Secs. 423(d), 1382c(a)(3). If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied. 20 C.F.R. Secs. 404.1520(b), 416.920(b). If the claimant is not found to have an impairment which significantly limits his or her ability to work (a severe impairment), then he or she is not disabled. 20 C.F.R. Secs. 404.1520(c), 416.920(c).
 
 
 19
 If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments. 20 C.F.R. Secs. 404.1520(d), 416.920(d). See 20 C.F.R. Secs. 404.1525(a), 416.925(a). If so, benefits are owing without further inquiry. In the instant case, the ALJ found that Riley did not suffer from one of the listed impairments. In such a case, assuming the individual had previously worked, the Secretary must next decide whether the claimant can return to the job he or she previously held. 20 C.F.R. Secs. 404.1520(e), 416.920(e). By showing "a medical basis for an impairment that prevents him from engaging in his particular occupation," the claimant establishes a prima facie case of disability. Hephner v. Mathews, 574 F.2d 359, 361 (6th Cir.1978). In the instant case the ALJ found that Riley was not capable of returning to his particular occupation.
 
 
 20
 At this step in the analysis, it becomes the Secretary's burden to establish the claimant's ability to work. Allen, 613 F.2d at 145. The Secretary must prove that, taking into consideration present job qualifications such as age, experience, education, and physical capacity, and the existence of jobs to match those qualifications, the claimant retains the capacity to perform a different kind of job. 20 C.F.R. Secs. 404.1520(f)(1), 416.920(f)(1); Heckler v. Campbell, 461 U.S. 458, 460 (1983). The Secretary's burden can, on occasion, be satisfied by relying on the medical-vocational guidelines, otherwise known as the "grid." See 20 C.F.R. Pt. 404, Subpt. P., App. 2. If the characteristics of the claimant do not identically match the description in the grid, however, then the grid is used only as a framework or a guide to the disability determination. Kirk, 667 F.2d at 528. In the instant case the ALJ determined that claimant's characteristics matched the description in the grid at Rule 201.07 indicating no disability. 20 C.F.R. Pt. 404, Subpt. P., App. 2.
 
 A.
 
 21
 Claimant argues that the ALJ erroneously concluded that there was insufficient evidence to support a debilitating mental impairment prior to October 29, 1982. We reject this argument.
 
 
 22
 The ALJ, in his September 21, 1987 Recommended Decision, held:
 
 
 23
 In any event, while two specialists in internal medicine noted that the claimant seemed depressed, no one described the signs leading to that conclusion, so that there is no objective medical evidence whatsoever of the claimant's psychiatric condition in this record. In addition, treating physician Dr. Danao's notes suggest that he was not aware of any significant degree of depression prior to December 11, 1982....
 
 
 24
 A medical advisor also testified at the supplemental hearing.... [H]e believed that the evidence as a whole, including the claimant's testimony at the original hearing, suggested that the deceased wage earner suffered from an adjustment reaction with mixed emotional features including depressive features. The medical advisor did not feel such an adjustment disorder would be disabling for a sustained period if the affected individual sought treatment. He also felt that the failure of the claimant and his family to seek psychiatric treatment suggested that the condition was not that severe.... Given the lack of any medical evidence permitting an assessment of the severity of the claimant's psychiatric condition or, indeed, any medical evidence that such a condition existed at all prior to December, 1982, the Administrative Law Judge must find that there is no medical evidence that the claimant had a severe psychiatric impairment prior to October 29, 1982....
 
 
 25
 Drs. Dale, Danao, Gerling, Kumar and Ferrari documented no neurological or behavioral abnormalities in any of claimant's examinations prior to October 29, 1982. Prior to October 29, 1982, Riley took care of his own needs, performed light housework, fished, maintained a boat, and helped raise two teenage children. He continued to attend church and entertained family and friends. Though claimant alleged fully disabling and debilitating symptomatology, the ALJ may distrust a claimant's allegations of disabling symptomatology as implausible if the subjective allegations, his personal observations and the objective medical evidence contradict.
 
 
 26
 In order to establish that a mental disorder reaches the level of severity to be considered disabling, a claimant must satisfy the documentation requirements of 20 C.F.R. Pt. 404, Subpt. P., App. 1, Sec. 12.00(B): "The existence of a medically determinable impairment of the required duration must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory or psychological test findings."
 
 
 27
 Furthermore, the ALJ completed a Psychiatric Review Technique Form indicating a non-severe affective disorder. In order to establish that an affective disorder reaches the level of severity to be considered disabling, a claimant must satisfy the requirements of subsections A and B to section 12.04. Subsection A requires "[m]edically documented persistence, either continuous or intermittent, of [depressive syndrome]." Depressive syndrome is characterized by showing at least four of nine listed symptoms. Although the testimony of both claimant and his wife indicate the occurrence of the symptoms listed in section 12.04(A), these symptoms were not medically documented. Furthermore, although claimant was unable to perform his past relevant work as a sporting goods sales representative, he did retain the residual functional capacity to perform sedentary semiskilled work prior to October 29, 1982.
 
 
 28
 Because claimant provided no medically documented evidence to show that he met the criteria of section 12.04(A) prior to October 29, 1982, we hold that the finding of the Appeals Council is supported by substantial evidence.
 
 
 29
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Appellee argues that claimant has waived any entitlement to disability insurance benefits prior to November 10, 1981, by failing to appeal this initial determination. Because we affirm the Secretary's determination on other grounds, we need not address this assertion